400 F.Supp. 497 (1975)
The DUPLAN CORPORATION, Plaintiff,
v.
DEERING MILLIKEN, INC., et al., Defendants.
DEERING MILLIKEN RESEARCH CORPORATION, Plaintiff,
v.
The DUPLAN CORPORATION and Burlington Industries, Inc., Defendants.
The DUPLAN CORPORATION et al., Plaintiffs on the Counterclaim,
v.
DEERING MILLIKEN RESEARCH CORPORATION, Defendant on the Counterclaim,
and
Deering Milliken, Inc., et al., Additional Defendants on the Counterclaim.
Civ. A. Nos. 71-306, 70-968, 69-1096, 68-705, 69-777, 70-14, 70-189, 70-250, 70-295, 70-358, 70-385, 70-386, 70-391, 70-493, 70-622, 70-628, 70-677, 70-683, 71-87 to 71-102, 71-115, 71-126, 71-127 and 71-283.
United States District Court, D. South Carolina, Spartanburg Division.
June 12, 1975.
*498 *499 *500 *501 Leatherwood, Walker, Todd & Mann, Fletcher C. Mann, Greenville, S. C., Parrott, Bell, Seltzer, Park & Gibson, Charles B. Park, III, Charlotte, N. C., Wilkie, Farr & Gallagher, David L. Foster, New York City, for The Duplan Corp., The Schwarzenbach-Huber Co., Jonathan Logan, Inc., Frank Ix & Sons Virginia Corp., Lawrence Texturing Corp., and United Merchants & Manufacturers, Inc.
Haynsworth, Perry, Bryant, Marion & Johnstone, O. G. Calhoun, Greenville, S. C., Cushman, Darby & Cushman, William K. West, Jr., Washington, D. C., for Burlington Industries, Inc., Madison Throwing Co., Leon Ferenbach, Inc., and National Spinning Company, Inc.
Perrin, Perrin & Mann, Edward P. Perrin, Spartanburg, S. C., David Rabin, Smith, Moore, Smith, Schell & Hunter, McNeill Smith, Greensboro, N. C., for Texfi Industries, Inc., Blanchard Yarn Co., Reliable Silk Dyeing Co., Spring-Tex, Inc., Hemmerich Industries, Inc., Texelastic Corp., Dixie Yarns, Inc., and Olympia Mills, Inc.
Butler, Means, Evins & Browne, Thomas A. Evins, Spartanburg, S. C., Burns, McDonald, Bradford, Erwin & Few, Howard L. Burns, Greenwood, S. C., Paul Weiss, Rifkind, Wharton & Garrison, Jay Greenfield, Morgan, Finnegan, Durham & Pine, Granville M. Pine, New York City, for Deering Milliken Research Corp., Deering Milliken, Inc., Moulinage et Retorderie de Chavanoz.
Ward, Howell & Barnes, Rufus M. Ward, Spartanburg, S. C., Brumbaugh, Graves, Donohue & Raymond, Granville M. Brumbaugh, Sr., New York City, for Ateliers Roannais de Constructions Textiles.
Robinson, McFadden & Moore, T. T. Moore, Columbia, S. C., Cooke & Cooke, *502 Arthur O. Cooke, Greensboro, N. C., for ARCT, Inc.

ORDER
HEMPHILL, District Judge.
This is a consolidated patent-antitrust case, spawned from efforts of Deering Milliken, Inc., to collect royalties on certain patents licensed to Duplan, Burlington, Inc. and others. Over forty causes of action matured in an uncoordinated but connected series of law suits among the various litigants, grouped on one side or another according to common interests. Issues of validity, infringement, fraud, antitrust, monopoly and others (minor) run throughout the cases which were consolidated for disposition by a Panel on Multi-District Litigation, and finally assigned to South Carolina. Those opposing Deering Milliken, Inc., and associates, are generally called "throwsters" because of the nature of their textile production.
This order is published as a decision on a recusal motion made by Simon H. Rifkind, Esquire, of the law firm of Paul, Weiss, Rifkind, Wharton and Garrison of New York City. The motion, alleging bias and prejudice of the trial judge, is made pursuant to and in attempted compliance with 28 U.S.C. § 144, 28 U.S.C. § 455 (as amended by P.L. 93-512, 88 Stat. 1609, December 5, 1974), and Canon 3C of the American Bar Association's Code of Judicial Conduct. Because of the substantive and procedural errors of the movant, discussed infra, the issue presented is not whether this court is required by law to recuse itself; rather, this matter raises the question of whether this or any court can allow itself to be coerced by a powerful but dissatisfied law firm.[1]
The motion herein is based on four grounds. First, it is said that this court, in reviewing in camera "a vast quantity" of privileged documents which are not admissible in evidence, is thereby rendered incapable of excluding acquired information from consideration while deciding the case. Second, the movant contends that this court "has indicated a dislike for Europeans in general and the French in particular." Six specific comments are relied upon to demonstrate the court's "anti-European bias." Third, five comments were listed which allegedly express the court's "strongly negative views about the Patent Office [and] the patent procurement system . . .," while six listed comments are said to show bias against patent lawyers. Movant claims that such statements "cannot help but affect our clients who are seeking to enforce their patents." Finally, movant complains that the court has criticized movant's "insistence on trial by jury of the patent issues;" it cites four instances of "criticism which causes concern about the likelihood of an impartial trial."[2]
A recital of the developments leading to this motion is essential.[3] On February 26, 1975, this court received a letter, *503 over the signature of Rifkind, which made a "formal request" that this case be assigned to another judge. By notice dated March 3, 1975, a hearing was scheduled for the afternoon of April 1, to discuss the contents of that letter. On March 5, the court issued a "Housekeeping Order" directing all concerned counsel to be present at that hearing. The order further directed that any and all proposed orders were to be filed with the Clerk of Court on or before March 25, 1975; the court specified that the filing requirement was applicable to those "matters for consideration on the afternoon of April 1 [recusal matters]." On March 22, movant submitted alternative proposed orders pertaining to discretionary withdrawal of this judge. On March 26, movant submitted a memorandum, supporting its proposed orders, which relied exclusively on Canon 3C of the Code of Judicial Conduct and on 28 U.S.C. § 455 (as amended by P.L. 93-512, 88 Stat. 1609, December 5, 1974).
Argument on the "formal request" for withdrawal (not yet made a motion under the provisions of 28 U.S.C. § 144) was heard in Rock Hill, South Carolina, on April 1, 1975. The court began by stating that "I will accept the letter as a motion,"[4] but noted that "I have no record before me, such as any supporting affidavits, nor any record before me certified by any associate counsel of the State of South Carolina."[5]
Attorney Rifkind spoke first. He read his "formal request" into the record. Attributing neither "fault" nor "wrongdoing" to anyone,[6] he nevertheless maintained "that the [disqualifying] actions have been taken and that they have disabled the judge."[7] Specifically abstaining from invoking § 144,[8] Rifkind instead relied primarily on the Code of Judicial Conduct and on "the comments of the reporters on the new legislation recently enacted as an amendment to Section 455."[9]
Counsel for the opposition, (hereinafter referred to as the throwsters) effected extensive counter argument, directed primarily toward the movant's failure to comply with the procedural requirements of 28 U.S.C. § 144.[10] Counsel also emphasized that all the quotations which allegedly demonstrated the bias and prejudice of the trial judge were taken out of context, causing a distortion of their intended meaning. In reply, Mr. Rifkind, at the "twelfth hour", distributed his § 144 motion, an affidavit of his clients (dated March 20, 1975) and a certificate of good faith (dated March 31, 1975) which had not been signed by any associate counsel from South Carolina.[11] The court mentioned the possibility of further hearings on the Section 144 motion, then adjourned the hearing (the afternoon was waning and the New York counsel wished to make the evening plane connections to New York from Charlotte).
*504 In a letter to this court dated April 3, 1975, Attorney Rifkind stated that further hearings on the question of recusal would be "repetitious." In reply, throwster counsel John W. Malley, Esquire, insisted that, since Rifkind chose to delay his motion until the conclusion of the April 1 hearing, counsel was not afforded an opportunity to "argue the legal sufficiency of the supporting affidavits." While this court fails to see how such argument, which had been precluded by Rifkind's choice of tactics, would be repetitious, it has concluded that further argument would not be productive. Accordingly, no further hearings have been scheduled.
On May 1, 1975, the throwsters submitted a memorandum in opposition to the § 144 motion. As a result of argument contained therein, Howard Burns, Esquire, and Thomas Evins, Esquire, both of the bar of the State of South Carolina, signed the certificate of good faith on May 15, 1975, forty-five days after it had been submitted. On May 19, 1975, movant submitted a memorandum in reply to the throwsters' memorandum of May 1, 1975.

QUESTIONS PRESENTED
1. Is disqualification required by the Code of Judicial Conduct?
2. Is disqualification required by 28 U.S.C. § 455?
3. Is disqualification required by 28 U.S.C. § 144?

CONCLUSIONS OF LAW

1) Disqualification is not required by the Code of Judicial Conduct.

Canon 3C(1)(a) of the Code of Judicial Conduct[12] provides:
(1) A judge should disqualify himself in a proceeding in which his impartiality might reasonably be questioned, including but not limited to instances where:
(a) he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding. . . .
This court is of the opinion that Canon 3C is intended to be utilized by every judge at the outset of every case as a checklist to assist him in determining whether he should at that point disqualify himself from any participation in the proceedings. Canon 3C(1) lists specific situations which require self-imposed disqualification when the judge has:
(a) personal bias or prejudice concerning a party, or knowledge of a disputed fact;
(b) served as a lawyer, or as partner of a lawyer, engaged in the present controversy;
(c) a fiduciary interest in the matter; or
(d) an interest as a party, or relative of a party, in the matter.
The matters noted in paragraphs (b), (c), (d) and the second portion of (a) clearly would be apparent to a judge prior to his participation in the proceeding. A consistent reading of the Canon requires that the bias and prejudice referred to in paragraph (a) is that bias and prejudice which the judge is cognizant of prior to any personal participation in an action.
A federal judge who has become active in a proceeding has the benefit of statutory guidance as to when and under what conditions he should disqualify himself. A judge in his official capacity is not responsible to the Judicial Conference but to the people; the people exercise control over judges through the Congress of the United States. If the *505 statutory guidelines on recusal which were promulgated by Congress do not require the disqualification of a presiding judge, and indeed may impose upon him a duty not to recuse himself, it is inconceivable that the Judicial Conference intends to order him to disobey the Congressionally-imposed duty.
This court is therefore of the opinion that, once a federal judge has commenced his deliberations in a particular action, any challenge to his continued consideration of that matter, based on grounds for which Congress has provided a remedy, must employ those remedies and not the Code of Judicial Conduct. Congress has provided methods to disqualify a trial judge who exhibits bias and prejudice for or against a party to an action; movant has included those methods in its pleadings. The court will therefore consider those statutory provisions without further discussion of the Code of Judicial Conduct.

2) Disqualification is not required by 28 U.S.C. § 455.

28 U.S.C. § 455 (as amended by P.L. 93-512, 88 Stat. 1609, dated December 5, 1974) states in paragraph (a): "Any . . . judge . . . of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned [emphasis added]." Section 3 of P.L. 93-512 states that revised § 455 "shall not apply to the trial of any proceeding commenced prior to the date [December 5, 1974] of this Act . . . [emphasis added]." Finally, paragraph (d)(1) of revised § 455 states that the term "`proceeding' includes pretrial, trial, appellate review, or other stages of litigation . . .."
In its Memorandum of March 26, 1975, movant stated: "Since the trial of this proceeding did not commence before December 5, 1974, the statute is here applicable."[13] The statement went unchallenged at the April 1 hearing and in the throwsters' Memorandum of May 1. The court, however, does not concur in this reading. The statute refers to partiality which becomes apparent during "proceedings" before the court. Pretrial activities are included within the term "proceedings" and the statements allegedly showing bias and prejudice occurred during pretrial. The Act by its own terms does not apply to the trial of "any proceeding commenced prior to" December 5, 1974. This proceeding commenced long before December 5, 1974; the statements complained of occurred prior to December 5, 1974. Prior to December 5, 1974, this court was not guided by the theory now contained in the revision of § 455. The court therefore finds that 28 U.S.C. § 455 (as amended) is inapplicable here.
It has been well recognized that, if recusal is not warranted under 28 U.S.C. § 144, it is not required under the pre-1974 28 U.S.C. § 455 absent a showing that the trial judge either had a substantial pecuniary interest in the case or that he was a material witness thereto.[14] Since there has been no allegation that this judge either has a pecuniary interest in this case or that he is to be a material witness (and neither exists), it is clear that disqualification under 28 U.S.C. § 455 is unwarranted.

3) Disqualification is not required by 28 U.S.C. § 144.

Proper compliance with this section required the filing of an affidavit which states "that the judge before whom the matter is pending has a personal bias or prejudice either against . . . [the moving party] or in favor of any adverse party . . .."[15] It is *506 well recognized that the affidavit, which is of "indispensable value,"[16] must be filed in a timely manner and must be legally sufficient.[17] Once the disqualification affidavit is filed under the statute, the trial judge must treat the matters asserted therein as true. He is permitted to determine the legal sufficiency of the affidavit after having satisfied himself that the paper work is in order.[18] The Supreme Court has noted that:
[T]he section withdraws from the presiding judge a decision upon the truth of the matters alleged. . . . And the reason is easy to divine. To commit to the judge a decision upon the truth of the facts gives chance for the evil against which the section is directed.[19]
The Court's rule applies "even if the allegations are known by the judge to be false."[20] The moving party's "and his attorney's sense of ethics are the sole limits provided by this section."[21] The judge is therefore "denied that `day in court' to whose provision for others he owes his very office."[22] When the judge "[is] tested in that manner, if the affidavit and accompanying certificate of counsel of record meet the requirements of the statute, the presiding judge . . . stands recused."[23] Therefore, the twenty-four out-of-context statements culled *507 from the vast record of this case will not be placed back into context, but will be allowed to stand as they were selected.[24]
A 1949 revision of § 144 presented Congress with the opportunity to remove from the hands of the trial judge any consideration of the legal sufficiency of the affidavit. By retaining such a procedure, Congress apparently acquiesced in it.[25] The affidavit which the judge must consider must therefore strictly comply with all Congressionally-imposed requirements before it will effectively disqualify a trial judge.[26] To be sufficient under this section the affidavit must give "fair support to the charge of a bent of mind that may prevent or impede impartiality of judgment."[27] The factual allegations which are said to show that "bent of mind" must establish, by more than a prima facie case, that "the mind of the judge is closed to justice."[28] An affidavit, such as the one here, which purports to be based on the cumulative effect of a series of statements may be legally sufficient, but "it is axiomatic, that a whole can be no greater than its component parts."[29] Therefore, when this court is `presented with the embarrassing situation of passing upon . . . [the] affidavit"[30] now before it, each category of bias and prejudice stated and relied upon by movant must be viewed for its independent legal sufficiency; a series of allegations, if legally insufficient in themselves, cannot be rendered legally sufficient merely by the adroit arrangement of quotations.[31]
The certificate of counsel is an indispensable part of the affidavit; as such, the statutory language requiring that the affidavit "be accompanied by a certificate of counsel of record *508 stating that it is made in good faith"[32] is subject to strict construction.[33] It has been noted that "[t]he certificate must be signed by an attorney who is a member of the bar of the Court. . . . The statute is not satisfied by having another lawyer . . . execute the certificate."[34] This is the requirement which has been imposed in this district.[35] It is a "vital and significant requirement" in the prevention of abuse of § 144.[36]
Counsel for movant states in his memorandum of May 19, 1975, that any argument asserting the need for local counsel is "disingenuous." However, the courts have consistently found the opposite to be true:
This is no meaningless provision; its purpose is obvious. A judge may not consider the truth or falsity of allegations in an affidavit of personal prejudice or bias, and the provision requiring the certificate of a member of the bar is a precaution against abuse of the privilege afforded by the act.[37]
Since the certificate serves to shield the court, which otherwise cannot test the truth of the alleged facts, it must also "carry the assertion that counsel believes the facts alleged to be accurate and correct."[38] Counsel's good faith must be stated; once stated, "the Court cannot pass upon the good faith of the affiant."[39]
Counsel's good faith was stated here, but the certificate was not signed by a member of the bar of South Carolina until May 15, 1975, despite the fact that this court brought the requirement to the attention of all counsel on April 1.[40] No member of the bar of this court present at that hearing made any effort to sign the certificate of good faith at that time. This court therefore finds that the affidavit was not lawfully certified until May 15, 1975 and hence that the affidavit in support of the recusal motion was legally insufficient and of no effect prior to that date.
The courts uniformly recognize that "[n]othing is more important in an affidavit than timeliness, and its counterpart, waiver."[41] The movant wishes this court to disregard this rule, arguing in its memorandum of May 19, 1975, that, since "no party can be prejudiced by the timing of the application," the motion is not untimely. After an exhaustive review of the case law pertaining *509 to judicial disqualification, this court has yet to find a case, nor has counsel cited any supporting authority, which makes prejudice to a party a factor in consideration of the timeliness of an application. Timeliness is a statutory requirement, not at all dependent on the situation of the parties. Movants also quote Professors Wright, Miller and Cooper as standing for the view that a party cannot waive disqualification;[42] the section quoted pertains only to waiver under 28 U.S.C. § 455. Further discussion on the same page indicates that "[a] litigant can waive his right to file an affidavit of prejudice under Section 144 of Title 28 by failing to act in a timely manner."[43] Even if waiver was not explicitly recognized, the Supreme Court has indicated that long delay in requesting such an extraordinary remedy would fully justify a court in the exercise of its discretion to deny relief.[44] This court will not be deterred from recognizing that timeliness is an essential element of any motion to disqualify a judge.
The United States Court of Appeals for the Fourth Circuit has repeatedly stated that a reasonable challenge against a trial judge for bias and prejudice "must be made at the first opportunity after discovery of the facts . . . [allegedly requiring] disqualification. . . ."[45] In the Tenth Circuit case of Scott v. Beams,[46] the court rejected a recusal motion on timeliness grounds. Movants' memorandum of May 19, 1975 attempts to distinguish the case on the theory that the decision rested on the fact that the motion was filed "when . . . trial was drawing to an end." The court, however, also stated that the affidavit was untimely because it had been filed "two months after the bias and prejudice of the court became apparent. That was too late."[47] This view, totally ignoring the time of trial, is in accord with that of this circuit.[48] Together, these views indicate that this court must inquire into the time when the allegedly disqualifying actions became apparent to counsel.
Such consideration is complicated, however, when the motion for disqualification is made after an adverse ruling is entered.[49] Further complication results when filing is delayed because of the cumulative nature of the allegedly disqualifying comments.[50] In a 1970 case, one circuit court, faced with both these problems, held that promptness in asserting disqualification is required to prevent a party from awaiting a possibly adverse determination of its claim.[51] The court adopts this view as applicable to this case.
The court notes that an untimely objection may disqualify a trial judge *510 if "good cause" for the delay is shown.[52] If, however, the movants had been aware of available proof of the alleged bias and prejudice for some time, the rule is clear that the district judge is not required to find "good cause" for the delay in filing the affidavit.[53]
Application of the foregoing discussion of applicable law to the facts of this case forces the court to conclude that the request was not timely as required by 28 U.S.C. § 144. The affidavit was not tendered to the court for filing until April 1, 1975, six (6) days after recusal "matters for consideration" were to be filed under the terms of this court's order of March 5, 1975. Additionally, since the certificate of counsel's good faith is an "indispensable part" of any § 144 affidavit, the affidavit was not in proper form until it was certified on May 15, 1975.
Timeliness is essential to any recusal motion. To be timely, a recusal motion must be made at counsel's first opportunity after discovery of the disqualifying facts. The affidavit indicates that the disqualifying facts, which consisted of a series of remarks made by this court between October 18, 1971 and January 21, 1974, were not appreciated by counsel as showing bias and prejudice until this court issued its rulings of November 27 and December 19, 1974.[54] Between December 19, 1974, and the date that the affidavit was first submitted for filing, there was a full hearing in this case. On December 30, this court received a motion for reconsideration from movant. On January 13, 1975, this court received a memorandum from movant. On January 16, this court received a second memorandum from movant. On February 26, this court received a second motion from movant. On March 28, this court received a third memorandum from movant. Disregarding the innumerable letters which the court received from movant during this period, the hearing of April 1, 1975 was counsel's seventh, rather than first, opportunity to move for recusal after discovery of the allegedly disqualifying facts. The delay between the date of discovery of the disqualifying facts and the date of the properly submitted affidavit was one hundred forty-five (145) days. The law, however, requires that whenever reliance is placed upon the cumulative nature of several disqualifying facts, the moving party must act, after discovery of those facts, with greater expedition than is normally required. Counsel has failed to act with any noticeable expedition.
The "good cause" exception is inapplicable. The movant had been aware of the availability of proof of its alleged grounds for disqualification since January 21, 1974. There can be no "good cause" for delay since that date. The movant needed forty-five (45) days to certify its affidavit after it had been informed of the requirement by this court. There can be no "good cause" for delay under such circumstances. It is therefore the judgment of this court that counsel for movant has waived any and all possible grounds for disqualification which have allegedly occurred prior to May 15, 1975.
While the court need go no further to dispose of the matter currently before it, the court will assume arguendo that the affidavit had been properly filed and will turn its consideration to the legal sufficiency of the affidavit.
*511 In the case of In re J. P. Linahan,[55] Judge Frank of the United States Court of Appeals for the Second Circuit wrote an extraordinary opinion setting forth the proper "conception of the prejudice which disqualifies a judicial officer."[56] He noted that "[d]emocracy must, indeed, fail unless our courts try cases fairly, and there can be no fair trial before a judge lacking in impartiality and disinterestedness."[57] The existence of a fair and impartial tribunal has also been recognized as a basic requirement of due process.[58] Fairness and impartiality, however, must be considered objectively.[59] Bias and partiality therefore cannot be defined as the total absence of preconceptions; instead, it must be recognized that all individuals, including trial judges, have preconceptions and prejudices:
Interests, points of view, preferences, are the essence of living. Only death yields complete dispassionateness, for such dispassionateness signifies utter indifference. . . . An "open mind," in the sense of a mind containing no preconceptions whatever, would be a mind incapable of learning anything . . ..[60]
Courts have recognized that, to some extent at least, justice depends upon the atmosphere of the courtroom, which ultimately is dependent upon the demeanor of the trial judge.[61] However,
a trial judge by reason of the very nature of his office, as the presiding officer of the trial court cannot function in the abstract completely unmindful and unaware of variegated interests and divergent personalities.[62]
Judge Frank therefore contended that:
[t]he judge in our society owes a duty to act in accordance with those basic predilections inhering in our legal system . . .. The standard of dispassionateness obviously does not require the judge to rid himself of the unconscious influence of such social attitudes.[63]
Judge Frank noted that every judge has many "`learnings of the mind,' uniquely personal prejudices" which he must attempt to make himself aware of and thereby "nullify their effect."[64]
This self-knowledge is needed in a judge because he is peculiarly exposed to emotional influences; the "court room is a place of surging emotions * * *; the parties are keyed up to the contest, often in open defiance; and the topics at issue are often calculated to stir up the *512 sympathy, prejudice, or ridicule of the tribunal.[65]
The trial judge must ever be cognizant of that which is occurring in his courtroom:
[h]e must also shrewdly observe the strategems of the opposing lawyers, perceive their efforts to sway him by appeals to his predilections. He must cannily penetrate through the surface of their remarks to their real purposes and motives. He has an official obligation to become prejudiced in that sense. Impartiality is not gullibility. Disinterestedness does not mean childlike innocence. If the judge did not form judgments of the actors in those court-room dramas . . ., he could never render decisions.[66]
In this sense, some degree of bias and prejudice inevitably will develop during a difficult and protracted proceeding. Judges cannot be prohibited from feeling aversion or sympathy for either one party (or attorney) or the other. "Mild expressions of feeling are as hard to avoid as the feeling itself;" therefore such expressions are not forbidden.[67]
In observing "the strategems of the opposing lawyers" and searching for "their real purposes and motives," thereby complying with his "obligation to become prejudiced in that sense," the judge must realize that "[t]he trial judge in the federal court is more than a mere arbitrator to rule upon objections and to instruct the jury."[68] He forms judgments and makes comments thereon; he cannot be expected to do less. Yet despite recognition of this "obligatory prejudice," the trial judge is required to determine whether the affidavit of bias and prejudice is legally sufficient under 28 U.S.C. § 144 to compel his recusal.
This court believes that laws are made by men who hold justice as their goal. The rules governing the legal processes are an integral part of their efforts toward that goal. When courts are free to deviate from, or "broadly construe", their rules, law is being subverted and the expediency of the moment becomes their guiding star. When courts are no longer guided by the rule of law, they are no longer courts of law; their goal is no longer justice, but the unchecked rule of whatever is expedient.[69] Strict construction of court rules, known by all prior to initiation of a proceeding, is one of several essential actions which must be taken to avoid such a situation. "The destructive results of broad and loose construction" of this statute has been the subject of repeated warnings from numerous courts.[70] For this reason, strict compliance with the terms of § 144 has *513 been universally required[71] "in order to safeguard the judiciary from frivolous attacks upon its dignity and integrity, and to avoid interruption of its ordinary and proper functioning."[72] This court will therefore strictly construe the legal-sufficiency requirements of § 144.
It is difficult for a party to make a showing that the judge is personally biased or prejudiced, as required by 28 U.S.C. § 144, partially because a successful disqualification motion has been such an unusual and extraordinary occurrence.[73] The initial requirement is universally accepted: bias and prejudice is never implied but must be established by clear averments.[74] It has also been said that bias and prejudice must be shown by the conduct of the trial judge and may not be presumed or inferred from his subjective views.[75] Judge Craven of the United States Court of Appeals for the Fourth Circuit has said that "[i]t is hornbook law that attitude or feeling a judge may entertain toward the subject matter of a case does not disqualify him."[76] More frequently it is said that a claim of "personal bias and prejudice" exists whenever the affiant is able to state facts supporting his reasons for the alleged bias and prejudice.[77] Conclusory allegations charging the judge with improper conduct do not constitute the required "statement of facts" and therefore cannot justify disqualification.[78] The actual quotations in the affidavit do set forth specific facts and therefore do satisfy this initial requirement of disqualification.
*514 The facts relied upon by affiant in establishing the alleged bias and prejudice of the trial judge must be based on something other than rulings in the particular case[79] or "the words the judge uses in setting forth his rulings."[80] Comments of the trial judge concerning his rulings, or his statement of his reasons therefor, are not grounds for his disqualification.[81] 28 U.S.C. § 144 "was never intended to enable a discontented litigant to oust a judge because of adverse rulings . . .."[82] Recusation is not warranted simply because a party "might prefer that some other judge try his case."[83] Even a series of erroneous rulings against a litigant does not constitute grounds for a charge of bias and prejudice, for such rulings are subjected to correction on appeal.[84] Repeated rulings against a litigant, no matter how erroneous and how vigorously and consistently expressed, are not a basis for disqualification of a judge on the grounds of bias and prejudice."[85] One judge has noted that:
I have been shown the light by the Court of Appeals . . . [on several occasions in this case]. On appeal of my orders in each of these matters, I have been reversed in each instance. This having been done, the affiant has been made whole for any incorrect, adverse rulings which I previously have rendered in this case.[86]
In addition, "[a]n allegedly incorrect interpretation of a portion of a higher court's opinion does not tend to show such [bias or] prejudice."[87]
Similarly, adverse rulings in previous proceedings, whether correct or erroneous, and the trial judge's statement of the reasons therefor, are insufficient *515 to authorize disqualification under § 144.[88] The principle also applies, but with even greater force, to "anticipated" rulings[89] for there is a presumption that a trial judge has sufficient integrity to conduct an error-free trial.[90] For the aforementioned reasons, this court is of the opinion that its prior rulings - whether formal orders, rulings on motions or on the admissibility of pretrial testimony, etc.  and its statement of reasons therefor, may not be submitted by an affiant as proof of the existence of personal bias and prejudice on the part of this court. Where such items are included in the instant affidavit, they are struck for lack of legal sufficiency.
28 U.S.C. § 144 is designed to secure for all litigants a fair and impartial trial before a judge devoid of "personal bias or prejudice."[91] It does, however, call only for practical objectives and does not refer to neutrality in the absolute.[92] It provides a party with the means to insure that his trial is free of personal bias and prejudice on the part of the trial judge.[93] "The basis of the disqualification is that `personal bias or prejudice' exists, by reason of which the judge is unable to impartially exercise his functions in the particular case."[94] The "significant word of the statute" is "personal."[95]
*516 The express terms of § 144 clearly embrace only a "party" to a cause of action.[96] "Personal bias or prejudice" must appear to be "personal"; that is, directed against or for one of the parties.[97] The bias and prejudice is not "personal", and therefore not disqualifying, if it relates to a class of cases, "for in that event the prejudice instead of being personal would relate to the nature of the proceeding itself."[98] Furthermore, the personal prejudice against a party must be derived otherwise than through judicial proceedings.[99] As the Supreme Court held in 1966:
The alleged bias and prejudice to be disqualifying must stem from an extra-judicial source and result in an opinion on the merits on some basis other than what the judge learned from his participation in the case.[100]
This requirement is absolute; it has been interpreted in another circuit so as to enable a court to hold that a disqualification affidavit which does not allege the extrajudicial nature of the judge's bias is legally insufficient.[101] This court cannot go that far without guidance from its own Court of Appeals. Of course, had the extrajudicial source of bias been alleged, then the allegation would have been controlling.[102] Since the nature of the source was not specifically alleged, this court must determine whether there has been any showing of the source of the alleged bias; this court assumes no responsibility for the failure of movant to support the motion properly.
It has frequently been held that no opinion based upon evidence or the proceedings before a judge can be equated with "personal bias or prepudice" against a party.[103] Since the trial judge is familiar with the evidence and may comment thereon, it necessarily follows that he may form opinions as to the *517 evidence presented and consequently as to the merits.[104] An allegation of bias and prejudice which arises from a judge's courtroom participation in a case, exhibited by his conduct during the proceeding, is not within the ambit of § 144.[105] After all, "[i]t is the duty of a real judge to acquire views from evidence."[106] His opinion on the merits or parties is not the "personal bias or prejudice" spoken of in § 144; it is said that:
Every member of this court, every member of any court, every judge, when he hears a case or writes an opinion must form an opinion on the merits and oft times no doubt an opinion relative to the parties involved. But this does not mean that the judge has a "personal bias or prejudice." If it did, the disqualification of judges would be a matter of every-day rather than the unusual and extraordinary occurrence which the statute is designed to meet.[107]
Hence it may be said that the partial and biased mind "is the one that is closed to justice" because the existence of some factor dehors the record prevents its functioning.[108]
Additionally, § 144 is not directed against previous judicial exposure to the same or similar questions; a judge's expression of judicial opinion in an earlier proceeding which was based on his participation therein does not authorize disqualification in a similar subsequent proceeding.[109] The judge's expression *518 of his personal observations or opinions in an ongoing case is similarly not evidence of bias and prejudice within the meaning of § 144 if spoken while performing his judicial function.[110] Therefore, if the prejudice complained of was "judicial," and not "personal," in nature, recusal is not warranted.[111] It would be strange indeed if a trial judge became less qualified to preside over a particular case as a result of his increased competence therein.[112]
The aforementioned rulings are equally applicable to pretrial proceedings.[113] Comments of the trial judge made during a pretrial conference have been held to be unsupportive of a § 144 disqualification motion. One court held that a statement made in such a context might provide the basis for a claim of error on appeal; it did not, however, provide such a basis for a recusal motion.[114] Furthermore, a trial judge is permitted to comment and make inquiry during pretrial proceedings. If a judge, upon request of the parties, undertakes to hear and study depositions and to review papers and briefs, any adverse attitudes which he evidences towards a party as a result of such review are not grounds for recusal under § 144, simply because the attitudes were not derived from an extrajudicial source.[115] In a recent patent/recusal case, the trial judge who was presiding over the taking of depositions stated that the attorney/witness was "acting in a very devious manner" and instructed him to "straighten out and fly right or the Court is going to impose a little fine on you."[116] The *519 judge's fairness was then challenged on several grounds. The United States Court of Appeals for the Eighth Circuit disposed of the challenge against these statements by stating:
To the extent [that] . . . [the Judge's] remarks can be construed to impugn . . . [the attorney/witness'] veracity, they would seem to be prematurely made during pretrial proceedings and therefore unfair . . .. This type of prejudgment, although unfortunate, cannot serve as a basis for recusing . . . [the Judge].[117]
It is recognized that unfortunate or intemperate statements of the trial judge are seldom sufficient to require his recusal.[118] Allegations of lack of judicial restraint are not considered to be indicia of that "personal bias or prejudice" which is required by § 144.[119] It has therefore been held that a judge's comment does not require recusal when:
All it indicates is a conviction that the defendant is guilty, expressed by an injudicious choice of language during a long trial. It does not indicate any personal bias against defendant . . as a person, but rather a judicial state of mind against wrongdoers in general. A desire to see a defendant in jail, based solely on the evidence presented in court, and not upon any personal dislike for the defendant, no matter how injudiciously this desire is expressed, is not grounds for disqualification . . ..[120]
It is therefore clear that "[a] judge cannot be disqualified merely because he believes in upholding the law, even though he says so with vehemence . . ."[121] Similarly, when the motion is based on the cumulative effect of a series of statements, the fact that they all may appear to be intemperate is not grounds for recusal; Judge Friendly of the United States Court of Appeals for the Second Circuit has stated that:
The exhumation of these episodes from the long history of a toilsome case serves rather as a chastening reminder of how easily impatience in a judge, even if understandable, can produce the appearance of unfairness.
. . . . . .
Nevertheless we cannot say that the sum of these episodes required the judge to disqualify himself . . ..[122]
The fact that the alleged bias and prejudice must be "personal", and not "judicial", in character, combined with the fact that intemperate remarks are not sufficient to compel recusal, serve as safeguards to prevent abuse of § 144. It has long been recognized that:
The statute never contemplated crippling our courts by disqualifying a judge, solely on the basis of a bias (or state of mind, 255 U.S. 42, 41 S.Ct. 236, 65 L.Ed. 481) against wrongdoers, civil or criminal, acquired from evidence presented in the course of judicial proceedings before him. Any other construction would make the statute an intolerable obstruction to the efficient conduct of judicial proceedings, now none too speedy or effective.[123]
*520 This view has been adopted as the majority view and shows no signs of lessening in importance.[124]
In the determination of this matter, it will be beneficial to review how courts have applied the foregoing legal principles to actual factual situations. Pfizer, Inc. v. Lord,[125] a combined patent/anti-trust case, characterized by the trial judge as "practically the biggest single assignment ever taken on by a judge anywhere in the history of jurisprudence of any kind,"[126] provides a convenient starting point.
In Pfizer, the petitioners asserted that the trial judge, through his actions, statements and conduct, demonstrated personal bias and prejudice against them. The following statement of the trial judge about the patent office was one of the main grounds of attack:
I think you ought to tell your Attorney General, if he wants to look at something, he ought to look at that Patent Office. That has got to be the sickest institution that our Government has ever invented. It is just, as far as I can see, an attritional war between the patent applicant and the patent examiners, who apparently get paid on the piece work for how many patents they could put out. And you can examine for months some poor fellows that are out doing business and finally arrive at a price structure, and you might get an antitrust suit. But if you want to look, go back and look in your Patent Office and see what is happening to the Patent Office. I say that for the record and for posterity. That has got to be the weakest link in the competitive system in America.[127]
The Court of Appeals said that the trial judge's words were "strong. Yet his ire seems directed not at petitioners but at the government . . .." The court further clarified its position by stating:
even if we accept petitioner's arguments that these comments disclose a prejudicial attitude concerning the relationship between petitioners and the Patent Office, these observations may have come as a result of . . . [the Judge's] exposure to the prior proceedings and the facts disclosed during the pretrial proceedings. Thus, although . . . [the Judge's] comments were gratuitous and wholly extraneous to the question then before him, we cannot say that they *521 reflect an "extrajudicial bias" as is required for recusal under Grinnell, supra.[128]
The same rule must apply here. This court has received quite an education on the internal operation of the Patent Office from the judicial proceedings which have here transpired. The source of the alleged "bias or prejudice", if in fact it does exist, is purely judicial in character.[129] There is no indication in the instant affidavit that the alleged "bias or prejudice" predates the initiation of this proceeding. It is therefore the judgment of this court that the references in the affidavit to "the Patent Office" and the "patent procurement system" are legally insufficient to cause recusal.
Pfizer also introduces consideration of whether this court's in camera review of documents renders it incompetent to continue on to trial. In Pfizer, the Court of Appeals was fully aware that the trial judge had presided over the taking of innumerable pretrial depositions; it emphasized the complexities of the matters considered. Nevertheless, it held that the "cases will continue under . . . [the Judge's] aegis. . . . If petitioners' fears that they will not be afforded a fair trial should prove justified, they are not left without an appropriate remedy."[130] Thus the Court of Appeals indicated that information acquired during pretrial proceedings in a complex matter did not serve to disqualify the trial judge.
It must also be noted that this court here followed the procedures recommended in the Manual For Complex and Multi-District Litigation, which does not require recusal of the judge who had conducted the pretrial procedures. In the case of In re Federal Facilities Reality Trust,[131] the court, in discussing a recusal motion made well after the initiation of a lawsuit, stated that:
the efforts of one judge in hearing a case would be for nought if, once having reached some conclusion as the result of his being exposed to the particular facts of a case, he would then be precluded from exercising this familiarity in disposing of the case in its entirety. Another judge, if we were to reduce ourselves to this ridiculous absurdity, would then, of necessity, be forced to rehear the entire case and would, in all probability, arrive at the same conclusions which the first judge, by using his familiarity with the underlying facts of the case, could have reached with far greater dispatch.[132]
Support for the position that this court should not recuse itself under this theory is found in various transcripts of this very proceeding. On November 8, 1973, the court suggested the possibility of appointing a master to conduct the in camera review of documents. In response, counsel for Chavanoz, DMRC and DMI stated:
MR. GREENFIELD: Your Honor, we gave this an awful lot of thought between the last time we were here and today, and we want to do whatever will bring us to trial quickest. It was our feeling that if your Honor had time to devote to these that it would be quickest, that there would be no delay if your Honor did it himself.
. . . . . .
[W]ith respect to your Honor's question about how we feel about a reference, we at one point were prepared, and I was thinking we ought to *522 ask your Honor for a reference with the idea of moving along, and we felt if your Honor had time to devote that it would be faster.[133]
Movant had earlier resisted the appointment of a master to supervise discovery.[134] The court was therefore exposed to hundreds of privileged documents, yet not once was objection actually made to such procedure. It has been recognized by the United States Court of Appeals for the Fourth Circuit that prior exposure to the facts of a case does not render further consideration of the matter inappropriate:
the bias and familiarity with a case, which will disqualify, "must stem from an extrajudicial source and result in an opinion on the merits on some basis other than what the judge learned from his participation in the case." . . . [Citations omitted] If this were not true, any judge who ruled on a motion for a temporary restraining order in a civil action or on a motion for bail in a criminal case (rulings which to some extent require some knowledge of the facts and some opinion on the issues) would be disqualified from later hearing the case. . . . [Citations omitted] Or, to take another example: A trial court which, on appeal, has been reversed would be ineligible to try the same case again. See, Davis, Administrative Law Treatise, § 12.01, p. 144, vol. 2 (1958); Boyd v. County of Fresno (1960) 178 Cal.App.2d 443, 2 Cal.Rptr. 779, cert. denied 364 U.S. 893, 81 S.Ct. 224, 5 L.Ed.2d 188. That the rule is not in practice so applied was made clear in Federal Trade Com'n. v. Cenent Institute (1948) 333 U.S. 683, 703, 68 S.Ct. 793, 804, 92 L.Ed. 1010, reh. denied 334 U.S. 839, 68 S.Ct. 1492, 92 L.Ed. 1764, where the Court said:
"* * * In fact, judges frequently try the same case more than once and decide identical issues each time, although these issues involve questions both of law and fact."[135]
In this very case the Fourth Circuit has directed this court to closely consider each and every document, excise matters when necessary, and order that the balance of the documents be produced.[136] This court was complying with the specific instructions of the Fourth Circuit and therefore is unwilling to accept the concept that such compliance could serve as a basis for disqualification. This court therefore finds that its supervision of discovery proceedings, made in compliance with the Manual For Complex and Multi-District Litigation and without objection of the parties, does not in and of itself provide sufficient grounds to require disqualification of the trial judge.
Movant has further complained that this court has expressed strongly negative views of patent lawyers. Since the instant litigation requires the presence of patent attorneys on both sides of the controversy, it is unclear how the allegation, if true, could show the presence of prejudice either for one side or against the other. However, even if the allegedly prejudicial statements were directed solely against counsel for movant (which is not the case here), disqualification would not be warranted.
It is generally conceded that bias and prejudice directed toward counsel for a litigant, in the absence of similar emotions towards the litigant himself, is not ground for disqualification.[137] *523 For that reason, declarations of the trial judge displaying irritation with counsel, whether or not such irritation was justified, has frequently been held to be insufficient to require recusal.[138] It is only when the judge's "antipathy has crystalized to a point where the attorney can do no right" that he no longer will be able to impartially try the case.[139] Further, a judge's criticism of counsel in prior proceedings does not constitute a basis for disqualification under § 144.[140]
In Pfizer, Inc. v. Lord,[141] the United States Court of Appeals for the Eighth Circuit noted that trial advocates frequently construe the statements of a trial judge in a somewhat partisan light and magnify the impact of any comment of the court, whether favorable or unfavorable. The court stated that:
[T]he remark attributed to . . . [the Judge] that "it would not bother me to find that lawyers were part of the conspiracy" does not directly cast aspersions upon defense counsels' integrity, but we recognize that this cryptic remark might be so interpreted.[142]
Similarly, it has been noted that the judge's comments on the tactics of counsel are not sufficient to show prejudice or bias,[143] but rather merely reflect a conclusion of what the trial judge has learned from his participation in the case.[144]
The trial judge is permitted his likes and dislikes. He finds in members of the bar qualities he admires and detests. So long as these emotions do not cause injustice, they alone do not constitute grounds for recusal.[145] In fact, a judge may dislike and even distrust an attorney and yet be capable of doing exact justice towards his client.[146]
Finally, there has again been no showing that the alleged bias and prejudice against movant's counsel, if in fact it does exist, was caused by an extrajudicial source.[147] Even if the source had been shown, counsel has made no showing that the bias and prejudice had crystalized "to the point where the attorney can do no right." Therefore, recusal is not justified.
Six statements are said to show "a dislike for Europeans in general and the French in particular." The Supreme Court, in Berger v. United States,[148] declared that a trial judge was disqualified after having made the following comments:
If anybody has said anything worse about the Germans than I have I would like to know it so I can use it. . . . One must have a very *524 judicial mind, indeed, not be to prejudiced against the German-Americans in this country. Their hearts are reeking with disloyalty. This defendant is the kind of a man that spreads this kind of propaganda, and it has been spread until it has affected practically all the Germans in this country. This same kind of excuse of the defendant offering to protect the German people is the same kind of excuse offered by the pacifists in this country, who are against the United States and have the interests of the enemy at heart by defending that thing they call the Kaiser and his darling people. You are the same kind of a man that comes over to this country from Germany to get away from the Kaiser and war. You have become a citizen of this country and lived here as such, and now when this country is at war with Germany you seek to undermine the country which gave you protection. You are of the same mind that practically all the German-Americans are in this country, and you call yourselves German-Americans. Your hearts are reeking with disloyalty. I know a safeblower, he is a friend of mine, who is making a good soldier in France. He was a bank robber for nine years, that was his business in peace time, and now he is a good soldier, and as between him and this defendant, I prefer the safeblower.[149]
The comments listed in the affidavit were of an entirely different character and effect. It is the opinion of this court that the comments in the affidavit are legally insufficient to warrant disqualification in this case. There is no indication of the extrajudicial source of four of the documents. One document refers to foreign aid and one to procedures used in French courts. Neither indicate prejudice either for or against the moving party.[150]
Movant is also concerned with what it characterizes as sharp criticism of its insistence on trial by jury of the patent issues. Movant apparently has lost sight of the obligation imposed upon this court to expedite matters pending before it. To speed matters through the court, one district judge was "of the opinion that trials could be had much more speedily without juries . . .;" consequently, he repeatedly "urged" that the parties adopt such procedure.[151] He then noted that:
In paragraph 3 of the affidavit the attorneys urge as a basis for belief that prejudice existed, that the judge endeavored to persuade them to waive jury trials in certain condemnation actions. It should be noted that the statements of the court all took place in open court, were made in the course of judicial proceedings before the court and consisted of statements of the court's reasons why it appeared to him that the best interests of the United States, as well as of the landowners, would be served if many of the cases could be tried by the court instead of by a jury, thereby saving expense both to the government and to the landowners and providing more expeditious disposal of the controversies. They show no bias, personal or *525 otherwise, either in favor of the land-owners or against the United States. As before stated, no order was made denying jury trials, and in fact, the been tried by juries.[152]
Similarly, no order was entered here denying any party its right to a jury trial.
There is no showing of disqualifying bias and prejudice on the part of the trial judge when his actions demonstrate that he felt, in discharging his responsibilities, that strong courtroom measures were needed to prevent waste of time.[153] One trial judge stated that "if I have been guilty of trying to figure out a way where I could get at the key issues and dispose of them, I plead guilty to that."[154] Another judge publicly labelled one of the petitioners a "pettifogger" who had been "pettifogging for two hours and a half. . . . The remark . . . was merely a criticism of the lengthy presentation of a motion . . .."[155]
It is proper that § 144 is not to be used as an impediment to the efficient operation of the legal system. Nearly fifty years ago the United States Court of Appeals for the First Circuit noted that:
[i]f . . . this statute is permitted to be used by overzealous counsel, scanting their professional duty to the public weal and to the court as the protector of the public right as a method of procuring delay . . . and in many instances a new trial before a judge who must approach, de novo, problems already considered by another judge . . . the statute will leave immune from attack only the amorphous dummies reprobated by Mr. Justice McReynolds as unbecoming receptables for judicial power . . . . Only the timid and the incompetent . . . will be free from attack under this statute.[156]
This court is of the opinion that its efforts to avoid protracted delay, which did not prejudice movant's right to a trial by jury, is legally insufficient to require disqualification.
The foregoing discussion demonstrates that recusal is not required by § 144. In the 1961 case of In re Union Leader Corporation,[157] the United States Court of Appeals for the First Circuit stated that "[t]here is as much obligation upon a judge not to recuse himself when there is no occasion as there is for him to do so when there is."[158] Under the authority of this case, the court is under a duty not to recuse itself from further consideration of this matter.
Mr. Rifkind, however, disagrees. At the April 1 hearing, he relied upon the comments of Senator Ernest Hollings of South Carolina, who, while considering enactment of the revised § 144, stated that:
I learned from Professor Frank that the statutes and the decisions [advocating a "duty to sit" concept] followed the practical consideration of a scarcity of judges.
That was the case until the late 60s when we began to catch up. For example, in my own state of South *526 Carolina at that time [1961], we only had two federal judges. We now have five. Even if a judge is disqualified from one case then there are plenty of cases on the docket to keep him busy and several other judges who could hear that case. The opposite was true in yesteryear.[159]
The quoted material of Senator Hollings notes only one of the two reasons that the "duty to sit" concept came into existence and has since prospered. His statement effectively negates the argument going to availability of judges; however, it ignores the equally-important consideration of avoidance of "judge-shopping" which has been accentuated by the creation of additional judgeships. The "duty-to-sit" concept traditionally has been directed towards avoidance of the problem posed by the discontented litigant who has submitted a legally insufficient affidavit. As the United States Court of Appeals for the Second Circuit has noted:
It is no answer to refer to the large number of trial judges in the Southern District [of New York]. Any defense counsel who is a veteran of the criminal courtroom knows (or thinks he does) the personal characteristics of each of the Judges, and could easily advise his client that he would be much better off with Judges A, B or C rather than D, E or F. The state of mind of the defendant cannot be made the test for the selection of the trial judge.[160]
The cases cited in the accompanying footnote indicate the continuing judicial acceptance and support of the "duty-to-sit" concept.[161] In explain-in the general rationale for such a view, the United States District Court for the District of Massachusetts has stated that:
It would, of course, be fortunate if in each case all counsel and all parties were psychologically as well as legally content with the Judge assigned to try the litigation. But if one or more is discontent, the Judge is not on that ground alone entitled to disqualify himself. Unless disqualified, a Judge has a moral duty to sit even if it *527 be unpleasant for him or others. A Judge ought not to shift his work to his brethren. He ought to remember that every party has a right to insist on his obedience to the Court's rules; and that his unwarranted self-disqualification represents a breach of the rules which may be regarded as injurious to those who are content with the assignment of the case to him. Justice involves not only acting justly, but also appearing to act justly. It is part of appearing to do justly to adhere to the rules even when adherence excites objection by a person with an unwarranted sense of grievance.[162]
Judge Friendly of the United States Court of Appeals for the Second Circuit has elaborated by noting that the "duty-to-sit" obligation is "especially strong in a case like the present where the request for disqualification was not made at the threshold of the litigation and the judge has acquired a valuable background of experience."[163] This is such a case; the duty is "especially strong."
When confronted with a motion to recuse himself, Judge Craven noted that he had "never asked for a case in my life, nor have I ever refused one."[164] This court is confident that it could make the same statement. Unwarranted self-disqualification would breach the underlying ideal upon which Judge Craven's statement is based; i. e., that the traditions of the judiciary, which are "more pervasive, more potent and more precious than any standard of judicial conduct capable of being formulated by statute, rule or decision,"[165] do not allow a judge unlimited discretion as to which cases he will or will not try. 28 U.S.C. § 144, as interpreted, states that this court has a duty to try any case assigned to it.
This court is mindful of the present philosophies which prohibit the judge from making any statement, or giving any expression of reply to an accusation of bias. Obedient to the tenets of the law, aware of its duty to obey stare decisis whenever consistent with justice, this court will refrain. One is reminded of the words of the great Frankfurter in his concurring opinion in Wilkerson v. McCarthy, 336 U.S. 53, 65, 69 S.Ct. 413, 419, 93 L.Ed. 497 (1949):
A timid judge, like a biased judge, is intrinsically a lawless judge.
Perhaps it is well that we who live in glass houses should never throw stones. This court accepts and continues the restrictions that have preserved the integrity of the final ramparts of the freedom of the republic, the judiciary.
The motion(s) is denied.
And it is so ordered.
NOTES
[1] This court is reminded of the comment of Mr. Justice Frankfurter when he stated, in Craig v. Harney, 331 U.S. 367, 395-96, 67 S.Ct. 1249, 1264, 91 L.Ed. 1546 (1946), that "[t]he consequence of attacks may differ with the temperament of the judge. Some judges may take fright and yield while others become more set in their course if only to make clear that they will not be bullied."
[2] Again the court looks to the great mind of Frankfurter and his opinion in First Iowa Hydro-Elec. Co-op. v. F. P. C., 328 U.S. 152, 187, 66 S.Ct. 906, 922, 90 L.Ed. 1143 (1945), where he stated that "[a]dvocates . . . are like managers of pugilistic and election contestants, in that they have a propensity for claiming everything."
[3] The docket sheet, now forty-four (44) pages long, reveals the following facts. This case, a consolidation of forty-five causes of action, was originally filed in the United States District Court for the District of South Carolina on August 6, 1968; this judge issued his initial order (excepting a jurisdictional order) in this case on August 3, 1971. Since then, this court has presided over the depositions of eighty-one (81) persons over a period of one hundred thirty-two (132) days. It has presided over fifty-one (51) days of additional hearings, has issued eighty-five (85) orders, has examined over two thousand one hundred (2100) exhibits and has reviewed thousands of documents. The correspondence file alone (the court insisted that any letters sent to the court be circulated among all counsel) is voluminous.
[4] Transcript of Record, April 1, 1975, at 107.
[5] Id. at 108 (emphasis added).
[6] Id. at 130.
[7] Id. at 131.
[8] Mr. Rifkind stated:

[A]s I read the law, the office of Section 144 is to compel judicial action, judicial recusal. I don't come here in an effort to compel your Honor to grant recusal. I have no intention of doing anything coercive of the Court or of the Judge.
Id. at 136 (emphasis added).
[9] Id. at 137.
[10] Id. at 150-53, 154, 161, 175, 190, 192-94.
[11] Id. at 198. Mr. Rifkind stated that he had "been compelled to file this motion," Id. at 199, even though he had explained, only a few hours earlier, that a motion under § 144 was coercive and that he had "no intention of doing anything coercive." Id. at 136.

The court's reference to absence of signatures by South Carolina counsel is in no sense a criticism. The New York law firm of Rifkind provided all the oral argument and obviously prepared the papers. It must be assumed that some members of the New York firm knew the rules but chose to ignore them in this instance.
[12] Adopted by the Judicial Conference of the United States in April of 1973 and by the Supreme Court of South Carolina in October of that year.
[13] Memorandum of DMRC/Chavanoz, dated March 26, 1975, at 3.
[14] United States v. Hoffa, 382 F.2d 856, 861 (6th Cir. 1967), cert. denied, 390 U.S. 924, 88 S.Ct. 854, 19 L.Ed.2d 984 (1968); United States v. Smith, 337 F.2d 49 (4th Cir. 1964), cert. denied, 381 U.S. 916, 85 S. Ct. 1542, 14 L.Ed.2d 436 (1965).
[15] 28 U.S.C. § 144.
[16] In re Union Leader Corp., 292 F.2d 381, 385 (1st Cir. 1961), cert. denied 368 U.S. 927, 82 S.Ct. 361, 7 L.Ed.2d 190. See also Berger v. United States, 255 U.S. 22, 33, 41 S.Ct. 230, 65 L.Ed. 481 (1921); Beland v. United States, 117 F.2d 958, 960 (5th Cir. 1941), cert. denied, 313 U.S. 585, 61 S. Ct. 1110, 85 L.Ed. 1541; Currin v. Nourse, 74 F.2d 273, 275 (8th Cir. 1934), cert. denied, 294 U.S. 729, 55 S.Ct. 638, 79 L.Ed. 1259 (1935); Morse v. Lewis, 54 F.2d 1027, 1032 (4th Cir. 1932), cert. denied, 286 U.S. 557, 52 S.Ct. 640, 76 L.Ed. 1291.
[17] Davis v. Cities Service Oil Co., 420 F.2d 1278, 1282 (10th Cir. 1970); United States v. Hoffa, 382 F.2d 856, 859 (6th Cir. 1967), cert. denied, 390 U.S. 924, 88 S.Ct. 854, 19 L.Ed.2d 984 (1968); Brotherhood of Loc. Fire. & Eng. v. Bangor & Aroostook R. R., 127 U.S.App.D.C. 23, 380 F.2d 570, 576 (1967), cert. denied, 389 U.S. 327, 88 S.Ct. 437, 19 L.Ed.2d 560; Littleton v. DeLashmutt, 188 F.2d 973, 975 (4th Cir. 1951) (per curiam), cert. denied, 342 U.S. 897, 72 S.Ct. 229, 96 L.Ed. 672.
[18] Berger v. United States, 255 U.S. 22, 35, 41 S.Ct. 230, 65 L.Ed. 481 (1921); Pfizer, Inc. v. Lord, 456 F.2d 532, 537 (8th Cir. 1972), cert. denied, 406 U.S. 976, 92 S.Ct. 2411, 32 L.Ed.2d 676; Wolfson v. Palmieri, 396 F.2d 121, 124 (2d Cir. 1968) (per curiam); United States v. Hoffa, 382 F.2d 856, 859 (6th Cir. 1967), cert. denied, 390 U.S. 924, 88 S.Ct. 854, 19 L.Ed.2d 984 (1968); Brotherhood of Loc. Fire. & Eng. v. Bangor & Aroostook R. R., 127 U.S.App. D.C. 23, 380 F.2d 570, 576 (1967), cert. denied, 389 U.S. 327, 88 S.Ct. 437, 19 L.Ed. 2d 560; Rosen v. Sugarman, 357 F.2d 794, 797 (2d Cir. 1966) (Friendly, J.); Tucker v. Kerner, 186 F.2d 79, 84 (7th Cir. 1950); Refior v. Lansing Drop Forge Co., 124 F.2d 440 (6th Cir. 1942), cert. denied, 316 U.S. 671, 62 S.Ct. 1047, 86 L.Ed. 1746; Craven v. United States, 22 F.2d 605, 608 (1st Cir. 1927), cert. denied, 276 U.S. 627, 48 S.Ct. 321, 72 L.Ed. 739 (1928); Deal v. Warner, 369 F.Supp. 174, 176 (W.D.Mo.1973); Molinaro v. Watkins-Johnson CEI Div., 359 F.Supp. 474, 475 (D.Md.1973).
[19] Berger v. United States, 255 U.S. 22, 36, 41 S.Ct. 230, 234, 65 L.Ed. 481 (1921).
[20] Tynan v. United States, 126 U.S.App.D. C. 206, 376 F.2d 761, 764 (1967) (Tamm, J.) cert. denied, 389 U.S. 845, 88 S.Ct. 95, 19 L.Ed.2d 111. See also Hodgson v. Liquor Salesmen's Local No. 2, 444 F.2d 1344 (2d Cir. 1971); Brotherhood of Loc. Fire. & Eng. v. Bangor & Aroostook R. R., 127 U.S. App.D.C. 23, 380 F.2d 570, 576 (1967), cert. denied, 389 U.S. 327, 88 S.Ct. 437, 19 L.Ed.2d 560; Morse v. Lewis, 54 F.2d 1027, 1031 (4th Cir. 1932), cert. denied, 286 U.S. 557, 52 S.Ct. 640, 76 L.Ed. 1291; Deal v. Warner, 369 F.Supp. 174, 177 (W.D.Mo. 1973); United States v. Hanrahan, 248 F. Supp. 471, 475 (D.D.C.1965).
[21] United States v. Thomas, 299 F.Supp. 494, 498 (E.D.Mo.1968).
[22] United States v. Hanrahan, 248 F.Supp. 471, 475 (D.D.C.1965).
[23] Scott v. Beams, 122 F.2d 777, 788 (10th Cir. 1941), cert. denied, 315 U.S. 809, 62 S.Ct. 794, 86 L.Ed. 1208 (1942). See also United States v. Nehas, 368 F.Supp. 435, 437 (W.D.Pa.1973); United States v. Valenti, 120 F.Supp. 80, 85 (D.N.J.1954). "The Court will determine whether it is a good or bad reason; but not whether it is a true or false one." Holdsworth, History of English Law IX, 120 (1926), quoted in Nehas, supra.
[24] Not all courts are so generous. In United States v. Birrell, 276 F.Supp. 798 (S.D.N.Y. 1967), the court stated that:

Defendant repeatedly submits quotations out of context and ignores the requirement that "[t]he fair meaning of any remark must be interpreted in the light of the context in which it is uttered." Foster v. Medina, 170 F.2d 632, 633 (2d Cir. 1948) cert. denied, 335 U.S. 909, 69 S.Ct. 412, 93 L.Ed. 442 (1949).
Id. at 810.
[25] Pfizer, Inc. v. Lord, 456 F.2d 532, 537 (8th Cir. 1972), cert. denied, 406 U.S. 976, 92 S.Ct. 2411, 32 L.Ed.2d 676. See also Note, Disqualification of Judges, 70 Harv. L.Rev. 1435, 1438-39 (1966); Schwartz, Disqualification for Bias in the Federal District Courts, 11 U.Pitt.L.Rev. 415, 423 (1950).
[26] United States v. Anderson, 433 F.2d 856, 859 (8th Cir. 1970); Brotherhood of Loc. Fire. & Eng. v. Bangor & Aroostook R. R., 127 U.S.App.D.C. 23, 380 F.2d 570 (1967), cert. denied, 389 U.S. 327, 88 S.Ct. 437, 19 L.Ed.2d 560; Scott v. Beams, 122 F.2d 777 (10th Cir. 1941), cert. denied, 315 U.S. 809, 62 S.Ct. 794, 86 L.Ed. 1208 (1942); Molinaro v. Watkins-Johnson CEI Div., 359 F. Supp. 474, 476 (D.Md.1973); United States v. Hanrahan, 248 F.Supp. 471 (D.D.C.1965).
[27] Berger v. United States, 255 U.S. 22, 33-34, 41 S.Ct. 230, 233, 65 L.Ed. 481 (1921). See also Wolfson v. Palmieri, 396 F.2d 121, 124 (2d Cir. 1968) (per curiam); Rosen v. Sugarman, 357 F.2d 794, 798 (2d Cir. 1966) (Friendly, J.); Tucker v. Kerner, 186 F.2d 79, 84 (7th Cir. 1950); Foster v. Medina, 170 F.2d 632 (2d Cir. 1948), cert. denied, 335 U.S. 909, 69 S.Ct. 412, 93 L.Ed. 442; Craven v. United States, 22 F.2d 605, 607 (1st Cir. 1927), cert. denied, 276 U.S. 627, 48 S.Ct. 321, 72 L.Ed. 739 (1928); Deal v. Warner, 369 F.Supp. 174, 176 (W.D.Mo. 1973); Town of East Haven v. Eastern Airlines Inc., 293 F.Supp. 184, 187 (D.Conn. 1968).
[28] United States v. Hanrahan, 248 F.Supp. 471, 476 (D.D.C.1965) (Sirica, J.). See also N.L.R.B. v. Baldwin Locomotive Works, 128 F.2d 39, 57 (3d Cir. 1942).
[29] United States v. Valenti, 120 F.Supp. 80, 88 (D.N.J.1954).
[30] Tucker v. Kerner, 186 F.2d 79, 85 (7th Cir. 1950).
[31] The United States Court of Appeals for the Second Circuit has noted that, in a case where quotations were taken out of context, the Court could "reconstruct" the incidents and find that they did not "rise to the level of exhibiting a bent of mind impeding impartiality of judgment." Wolfson v. Palmieri, 396 F.2d 121, 125 (2d Cir. 1968) (per curiam).
[32] 28 U.S.C. § 144.
[33] United States v. Hanrahan, 248 F.Supp. 471, 475 (D.D.C.1965); United States v. Gilboy, 162 F.Supp. 384, 388 (M.D.Pa.1958); Sanders v. Allen, 58 F.Supp. 417, 420 (S.D. Cal.1944); United States v. 16,000 Acres of Land, etc., 49 F.Supp. 645, 653 (D.Kan. 1942).
[34] United States v. Hoffa, 382 F.2d 856, 860 (6th Cir. 1967), cert. denied, 390 U.S. 924, 88 S.Ct. 854, 19 L.Ed.2d 984 (1968). See also Currin v. Nourse, 74 F.2d 273 (8th Cir. 1934), cert denied, 294 U.S. 729, 55 S.Ct. 638, 79 L.Ed. 1259 (1935).
[35] See Rules of Practice For The United States District Court For The District of South Carolina, Rule 2 (1952).
[36] Brotherhood of Loc. Fire. & Eng. v. Bangor & Aroostook R.R., 127 U.S.App.D.C. 23, 380 F.2d 570, 578 (1967), cert. denied, 389 U.S. 327, 88 S.Ct. 437, 19 L.Ed.2d 560.
[37] United States v. 16,000 Acres of Land, etc., 49 F.Supp. 645, 652 (D.Kan.1942). See also United States v. Hoffa, 382 F.2d 856, 860 (6th Cir. 1967), cert. denied, 390 U.S. 924, 88 S.Ct. 854, 19 L.Ed.2d 984 (1968); In re Union Leader Corp., 292 F.2d 381, 385 (1st Cir. 1961), cert. denied, 368 U.S. 927, 82 S.Ct. 361, 7 L.Ed.2d 190; United States v. Hanrahan, 248 F.Supp. 471, 478 (D.D.C. 1965).
[38] In re Union Leader Corp., 292 F.2d 381, 385 (1st Cir. 1961), cert. denied, 368 U.S. 927, 82 S.Ct. 361, 7 L.Ed.2d 190. See also United States v. Hanrahan, 248 F.Supp. 471, 478 (D.D.C.1965).
[39] United States v. Hanrahan, 248 F.Supp. 471, 478 (D.D.C.1965). See also Simmons v. United States, 302 F.2d 71, 75 (3d Cir. 1962); In re Union Leader Corp., 292 F.2d 381, 385 (1st Cir. 1961), cert. denied, 368 U.S. 927, 82 S.Ct. 361, 7 L.Ed.2d 190.
[40] See text accompanying Footnote 5, supra. In addition, the throwsters' memorandum of May 1, 1975, included argument on this point.
[41] In re Union Leader Corp., 292 F.2d 381, 390 (1st Cir. 1961), cert. denied, 368 U.S. 927, 82 S.Ct. 361, 7 L.Ed.2d 190. See also Davis v. Cities Service Oil Co., 420 F.2d 1278, 1282 (10th Cir. 1970); Brotherhood of Loc. Fire & Eng. v. Bangor & Aroostook R.R., 127 U.S.App.D.C. 23, 380 F.2d 570, 576 (1967), cert. denied, 389 U.S. 327, 88 S.Ct. 437, 19 L.Ed.2d 560; In re United Shoe Machinery Corp., 276 F.2d 77, 79 (1st Cir. 1960).
[42] 13 Wright, Miller & Cooper, Federal Practice and Procedure: Jurisdiction § 3552 (1975) (footnotes omitted).
[43] Id. (Footnotes omitted).
[44] Ex parte Amer. Steel Barrel Co., 230 U.S. 35, 46, 33 S.Ct. 1007, 57 L.Ed. 1379 (1913).
[45] Chafin v. United States, 5 F.2d 592, 595 (4th Cir. 1925), cert. denied, 269 U.S. 552, 46 S.Ct. 18, 70 L.Ed. 407, quoted with approval in Duffield v. Charleston Area Medical Center, Inc., 503 F.2d 512, 516 (4th Cir. 1974) (Russell, J.).
[46] 122 F.2d 777 (10th Cir. 1941), cert. denied, 315 U.S. 809, 62 S.Ct. 794, 86 L.Ed. 1208 (1942).
[47] Id. at 789 (emphasis added).
[48] See cases at footnote 45, supra. See also United States v. Richmond, 178 F.Supp. 44, 46 (D.Conn.1958).
[49] Molinaro v. Watkins-Johnson CEI Div., 359 F.Supp. 474, 475 (D.Md.1973).
[50] Davis v. Cities Service Oil Co., 420 F.2d 1278 (10th Cir. 1970).
[51] Id. at 1282.
[52] 28 U.S.C. § 144 states that a party may file an affidavit late if "good cause shall be shown for failure to file it within such time." See also Davis v. Cities Service Oil Co., 420 F.2d 1278, 1282 (10th Cir. 1970).
[53] United States v. Hoffa, 382 F.2d 856, 860 (6th Cir. 1967), cert. denied, 390 U.S. 924, 88 S.Ct. 854, 19 L.Ed.2d 984 (1968).
[54] The rulings cannot serve as grounds for a recusal motion. See discussion in text accompanying footnotes 79-90, infra. Therefore, counsel's inclusion of these orders in the affidavit can have no purpose other than to show when it first recognized the alleged prejudice and bias in the court's earlier comments.
[55] 138 F.2d 650 (2d Cir. 1938) (Frank, J., with L. Hand, J. and Swan, J.).
[56] Id. at 651.
[57] Id., quoted in United States v. Thomas, 299 F.Supp. 494, 498 (E.D.Mo.1968); United States v. Hanrahan, 248 F.Supp. 471, 474 (D.D.C.1965); United States v. Richmond, 178 F.Supp. 44, 47 (D.Conn.1958); United States v. Valenti, 120 F.Supp. 80, 90 (D.N.J. 1954). See also In re Union Leader Corp., 292 F.2d 381, 384 (1st Cir. 1961), cert. denied, 368 U.S. 927, 82 S.Ct. 361, 7 L.Ed. 2d 190; Knapp v. Kinsey, 232 F.2d 458 (6th Cir. 1956), cert. denied, 352 U.S. 892, 77 S.Ct. 131, 1 L.Ed.2d 86.
[58] In re Murchison, 349 U.S. 133, 75 S.Ct. 623, 99 L.Ed. 942 (1955).
[59] Whitaker v. McLean, 73 App.D.C. 259, 118 F.2d 596 (1941) (per curiam).
[60] In re J. P. Linahan, 138 F.2d 650, 651-52 (2d Cir. 1938), quoted in United States v. Richmond, 178 F.Supp. 44, 47 (D.Conn. 1958); United States v. Valenti, 120 F.Supp. 80, 90 (D.N.J.1954).
[61] Knapp v. Kinsey, 232 F.2d 458, 467 (6th Cir. 1956), cert. denied, 352 U.S. 892, 77 S.Ct. 131, 1 L.Ed.2d 86. See also Brown v. Walter, 62 F.2d 798, 800 (2d Cir. 1933) (L. Hand, J.).
[62] United States v. Valenti, 120 F.Supp. 80, 90 (D.N.J.1954).
[63] In re J. P. Linahan, 138 F.2d 650, 652 (2d Cir. 1938), quoted in United States v. Valenti, 120 F.Supp. 80, 86 (D.N.J.1954). See also In re Union Leader Corp., 292 F. 2d 381, 388 (1st Cir. 1961), cert. denied, 368 U.S. 927, 82 S.Ct. 361, 7 L.Ed.2d 190; United States v. Thomas, 299 F.Supp. 494, 498 (E.D.Mo.1968); Cole v. Loew's, Inc., 76 F.Supp. 872, 877 (S.D.Cal.1948).
[64] In re J. P. Linahan, 138 F.2d 650, 652 (2d Cir. 1938).
[65] Id. at 653, citing Wigmore, Principles of Judicial Proof 960 (2d Ed., 1931).
[66] 138 F.2d at 654, quoted in United States v. Richmond, 178 F.Supp. 44, 47 (D.Conn. 1958); In re Federal Facilities Realty Trust, 140 F.Supp. 522, 527 (N.D.Ill.1956).
[67] Knapp v. Kinsey, 232 F.2d 458, 467 (6th Cir. 1956), cert. denied, 352 U.S. 892, 77 S.Ct. 131, 1 L.Ed.2d 86; Whitaker v. McLean, 73 App.D.C. 259, 118 F.2d 596 (1941) (per curiam).
[68] Knapp v. Kinsey, 232 F.2d 458, 466 (6th Cir. 1956), cert. denied, 352 U.S. 892, 77 S.Ct. 131, 1 L.Ed.2d 86.
[69] In The Amiable Isabella, 6 Wheat. (19 U.S.) 1, 73, 5 L.Ed. 191 (1821), Mr. Justice Story stated that "[w]e can as little dispense with forms as we can with substance." Mr. Justice Cardozo reminded us of this point one hundred years later:

Every system of law has within it artificial devices which are deemed in the main and on the average to promote convenience or security or other forms of public good. These devices take the form of rules or standards to which the individual though he be careless or ignorant, must at his peril conform.
Cardozo, Paradoxes of Legal Science 68 (1928).
[70] Craven v. United States, 22 F.2d 605, 608 (1st Cir. 1927), cert. denied, 276 U.S. 627, 48 S.Ct. 321, 72 L.Ed. 739 (1928); United States v. Hanrahan, 248 F.Supp. 471, 477 (D.D.C.1965); Cole v. Loew's Inc., 76 F. Supp. 872, 875 (S.D.Cal.1948); United States v. 16,000 Acres of Land, etc., 49 F.Supp. 645, 648 (D.Kan.1942).
[71] Brotherhood of Loc. Fire. & Eng. v. Bangor & Aroostook R.R., 127 U.S.App.D.C. 23, 380 F.2d 570, 576 (1967), cert. denied, 389 U.S. 327, 88 S.Ct. 437, 19 L.Ed.2d 560; Marquette Cement Mfg. Co. v. FTC, 147 F.2d 589 (7th Cir. 1945); Scott v. Beams, 122 F.2d 777, 788 (10th Cir. 1941), cert. denied, 315 U.S. 809, 62 S.Ct. 794, 86 L.Ed. 1208 (1942); United States v. Hanrahan, 248 F.Supp. 471, 475 (D.D.C.1965); In re Federal Facilities Realty Trust, 140 F.Supp. 522, 524 (N.D.Ill.1956).
[72] United States v. Valenti, 120 F.Supp. 80, 83 (D.N.J.1954), and cases collected at n. 2. See also United States v. Hanrahan, 248 F.Supp. 471, 475 (D.D.C.1965); United States v. Richmond, 178 F.Supp. 44, 46 (D.Conn.1958).
[73] Tucker v. Kerner, 186 F.2d 79, 84 (7th Cir. 1950); United States v. Hanrahan, 248 F.Supp. 471, 476 (D.D.C.1965); United States v. Lattimore, 125 F.Supp. 295, 296 (D.D.C.1954).
[74] United States v. Anderson, 433 F.2d 856, 860 (8th Cir. 1970); Brotherhood of Loc. Fire. & Eng. v. Bangor & Aroostook R.R., 127 U.S.App.D.C. 23, 380 F.2d 570, 576 (1967), cert. denied, 389 U.S. 327, 88 S.Ct. 437, 19 L.Ed.2d 560; United States v. Bolden, 355 F.2d 453 (7th Cir. 1966), cert. denied, 384 U.S. 1012, 86 S.Ct. 1919, 16 L.Ed.2d 1018; Enriquez v. United States, 314 F.2d 703 (9th Cir. 1963); Kowalsky v. United States, 290 F.2d 161 (5th Cir. 1961), cert. denied, 368 U.S. 875, 82 S.Ct. 120, 7 L.Ed.2d 76; Scott v. Beams, 122 F.2d 777, 788 (10th Cir. 1941), cert. denied, 315 U.S. 809, 62 S.Ct. 794, 86 L.Ed. 1208 (1942); United States v. Thomas, 299 F.Supp. 494, 499 (E.D.Mo.1968); United States v. Ramos, 291 F.Supp. 71, 75 (D.R.I.1968).
[75] United States v. Menk, 406 F.2d 124, 127 (7th Cir. 1968), cert. denied, 395 U.S. 946, 89 S.Ct. 2019, 23 L.Ed.2d 464 (1969).
[76] Lawton v. Tarr, 327 F.Supp. 670, 673 (E.D.N.C.1971) (Craven, J.).
[77] Ex parte Amer. Steel Barrel Co., 230 U.S. 35, 43-44, 33 S.Ct. 1007, 57 L.Ed. 1379 (1913); Tucker v. Kerner, 186 F.2d 79, 84 (7th Cir. 1950); Price v. Johnston, 125 F.2d 806, 811 (9th Cir. 1942), cert. denied, 316 U.S. 677, 62 S.Ct. 1106, 86 L.Ed. 1750; Refior v. Lansing Drop Forge Co., 124 F.2d 440, 444-45 (6th Cir. 1942), cert. denied, 316 U.S. 671, 62 S.Ct. 1047, 86 L.Ed. 1746; Scott v. Beams, 122 F.2d 777, 788 (10th Cir. 1941), cert. denied, 315 U.S. 809, 62 S.Ct. 794, 86 L.Ed. 1208 (1942); Sacramento Suburban Fruit Lands Co. v. Tatham, 40 F.2d 894 (9th Cir. 1930).
[78] Scott v. Beams, 122 F.2d 777, 788 (10th Cir. 1941), cert. denied, 315 U.S. 809, 62 S.Ct. 794, 86 L.Ed. 1208 (1942); Craven v. United States, 22 F.2d 605, 607 (1st Cir. 1927), cert. denied, 276 U.S. 627, 48 S.Ct. 321, 72 L.Ed. 739 (1928); Saunders v. Piggly Wiggly Corp., 1 F.2d 582 (W.D. Tenn.1924); Investors Thrift Corp. v. Sexton, 347 F.Supp. 1207, 1211 (W.D.Ark. 1972); United States v. 16,000 Acres of Land, etc., 49 F.Supp. 645, 654-55 (D.Kan. 1942). See also Annot. 2 A.L.R. Fed. 920, 933, 940-41 (1969).
[79] Chessman v. Teets, 239 F.2d 205, 215 (9th Cir. 1956); Littleton v. DeLashmutt, 188 F.2d 973 (4th Cir. 1951) (per curiam), cert. denied, 342 U.S. 897, 72 S.Ct. 229, 96 L.Ed. 672; Maret v. United States, 332 F. Supp. 324, 325 (E.D.Mo.1971); United States v. Richmond, 178 F.Supp. 44, 46 (D.Conn. 1958); United States v. 16,000 Acres of Land, etc., 49 F.Supp. 645, 650 (D.Kan. 1942).
[80] United States v. Lattimore, 125 F.Supp. 295, 296 (D.D.C.1954).
[81] United States v. Valenti, 120 F.Supp. 80, 86 (D.N.J.1954); United States v. 16,000 Acres of Land, etc., 49 F.Supp. 645, 650 (D.Kan.1942). See also Annot., 2 A.L.R. Fed. 920, 944, 947 (1969).
[82] Ex parte Amer. Steel Barrel Co., 230 U.S. 35, 44, 33 S.Ct. 1007, 1010, 57 L.Ed. 1379 (1913), quoted in Berger v. United States, 255 U.S. 22, 31, 41 S.Ct. 230, 65 L.Ed. 481 (1921); Tucker v. Kerner, 186 F.2d 79, 84 (7th Cir. 1950); Refior v. Lansing Drop Forge Co., 124 F.2d 440, 444 (6th Cir. 1942), cert. denied, 316 U.S. 671, 62 S.Ct. 1047, 86 L.Ed. 1746; United States v. Richmond, 178 F.Supp. 44, 46-47 (D.Conn. 1958); In re Federal Facilities Realty Trust, 140 F.Supp. 522, 525 (N.D.Ill.1956). See also Annot., 2 A.L.R. Fed. 920, 928-29 (1969). One must also consider the comment of Mr. Justice Frankfurter in N. L. R. B. v. Donnelly Co., 330 U.S. 219, 237, 67 S.Ct. 756, 91 L.Ed. 854 (1946), where he stated that "[i]t is not easy to satisfy interested parties, and defeated litigants, no matter how fairly treated, do not always have the feeling that they have received justice." The same may be said about those litigants who have received unfavorable rulings in the course of protracted litigation.
[83] United States v. Nehas, 368 F.Supp. 435, 436 (W.D.Pa.1973).
[84] Knapp v. Kinsey, 232 F.2d 458, 466 (6th Cir. 1956), cert. denied, 352 U.S. 892, 77 S.Ct. 131, 1 L.Ed.2d 86; In re J. P. Linahan, 138 F.2d 650, 654 (2d Cir. 1938), quoted in United States v. Richmond, 178 F.Supp. 44, 47-48 (D.Conn.1958); Refior v. Lansing Drop Forge Co., 124 F.2d 440, 444 (6th Cir. 1942), cert. denied, 316 U.S. 671, 62 S.Ct. 1047, 86 L.Ed. 1746; Ryan v. United States, 99 F.2d 864 (8th Cir. 1938), cert. denied, 306 U.S. 635, 59 S.Ct. 484, 83 L.Ed. 1037; In re Federal Facilities Realty Trust, 140 F.Supp. 522, 526 (N.D.Ill.1956). See also Annot., 2 A.L.R. Fed. 920, 927-29, 944 (1969).
[85] Maret v. United States, 332 F.Supp. 324, 326 (E.D.Mo.1971). See also United States v. Shibley, 112 F.Supp. 734 (S.D.Cal.1953).
[86] In re Federal Facilities Realty Trust, 140 F.Supp. 522, 525 (N.D.Ill.1956) (citations omitted). See also United States v. Richmond, 178 F.Supp. 44, 47 (D.Conn.1958).
[87] Fleischer v. A. A. P., Inc., 180 F.Supp. 717, 720 (S.D.N.Y.1959).
[88] Berger v. United States, 255 U.S. 22, 31, 41 S.Ct. 230, 65 L.Ed. 481 (1921); Morse v. Lewis, 54 F.2d 1027 (4th Cir. 1932), cert. denied, 286 U.S. 557, 52 S.Ct. 640, 76 L.Ed. 1291; Deal v. Warner, 369 F.Supp. 174, 177 (W.D.Mo.1973); Cole v. Loew's, Inc., 76 F.Supp. 872, 877 (S.D.Cal.1948), quoted in Maret v. United States, 332 F.Supp. 324, 325 (E.D.Mo.1971); United States v. Richmond, 178 F.Supp. 44, 46 (D.Conn.1958) and United States v. Valenti, 120 F.Supp. 80, 84 (D.N.J.1954). See also Annot., 2 A.L.R. Fed. 920, 935-37, 942-44, 947 (1969).
[89] Allen v. duPont, 75 F.Supp. 546 (D.Del. 1948).
[90] Wolfson v. Palmieri, 396 F.2d 121, 126 (2d Cir. 1968) (per curiam); In re Union Leader Corp., 292 F.2d 381, 389 (1st Cir. 1961), cert. denied, 368 U.S. 927, 82 S.Ct. 361, 7 L.Ed.2d 190; In re J. P. Linahan, 138 F.2d 650, 651-52 (2d Cir. 1938); Beland v. United States, 117 F.2d 958, 960 (5th Cir. 1941), cert. denied, 313 U.S. 585, 61 S.Ct. 1110, 85 L.Ed. 1541; Craven v. United States, 22 F.2d 605, 608 (1st Cir. 1927), cert. denied, 276 U.S. 627, 48 S.Ct. 321, 72 L.Ed. 739 (1928); Deal v. Warner, 369 F. Supp. 174, 177 (W.D.Mo.1973); Molinaro v. Watkins-Johnson CEI Div., 359 F.Supp. 474, 476 (D.Md.1973); United States v. Thomas, 299 F.Supp. 494, 498 (E.D.Mo. 1968).
[91] Mitchell v. United States, 126 F.2d 550, 552 (10th Cir. 1942), cert. denied, 316 U.S. 702, 62 S.Ct. 1307, 86 L.Ed. 1771; United States v. Thomas, 299 F.Supp. 494, 498 (E. D.Mo.1968); Town of East Haven v. Eastern Airlines, Inc., 293 F.Supp. 184, 187 (D.Conn. 1968); United States v. Devlin, 284 F.Supp. 477, 481 (D.Conn.1968); United States v. Hanrahan, 248 F.Supp. 471, 474 (D.D.C. 1965).
[92] In re Union Leader Corp., 292 F.2d 381, 388 (1st Cir. 1961), cert. denied, 368 U.S. 927, 82 S.Ct. 361, 7 L.Ed.2d 190; United States v. Thomas, 299 F.Supp. 494, 498 (E. D.Mo.1968).
[93] Deal v. Warner, 369 F.Supp. 174, 176 (W.D.Mo.1973); United States v. Thomas, 299 F.Supp. 494, 498 (E.D.Mo.1968).
[94] Ex parte Amer. Steel Barrel Co., 230 U.S. 35, 43, 33 S.Ct. 1007, 1010, 57 L.Ed. 1379 (1913), quoted in Tucker v. Kerner, 186 F. 2d 79, 84 (7th Cir. 1950); United States v. Thomas, 299 F.Supp. 494, 499 (E.D.Mo. 1968); United States v. Hanrahan, 248 F. Supp. 471, 476 (D.D.C.1965); In re Federal Facilities Realty Trust, 140 F.Supp. 522, 525 (N.D.Ill.1956); United States v. 16,000 Acres of Land, etc., 49 F.Supp. 645, 649 (D.Kan.1942).
[95] Craven v. United States, 22 F.2d 605, 607 (1st Cir. 1927), cert. denied, 276 U.S. 627, 48 S.Ct. 321, 72 L.Ed. 739 (1928). See also Tynan v. United States, 126 U.S.App.D.C. 206, 376 F.2d 761, 764 (1967) (Tamm, J.), cert. denied, 389 U.S. 845, 88 S.Ct. 95, 19 L.Ed.2d 111; Baskin v. Brown, 174 F.2d 391, 394 (4th Cir. 1949) (Parker, C. J.); United States v. Thomas, 299 F.Supp. 494, 499 (E.D.Mo.1968); United States v. Ramos, 291 F.Supp. 71, 75 (D.R.I.1968); United States v. Richmond, 178 F.Supp. 44, 47 (D. Conn.1958); In re Federal Facilities Realty Trust, 140 F.Supp. 522, 526 (N.D.Ill.1956); United States v. Valenti, 120 F.Supp. 80, 88 (D.N.J.1954); Johnson v. United States, 35 F.2d 355, 357 (W.D.Wash.1929).
[96] United States v. Valenti, 120 F.Supp. 80, 87 (D.N.J.1954).
[97] Knapp v. Kinsey, 232 F.2d 458, 466 (6th Cir. 1956), cert. denied, 352 U.S. 892, 77 S.Ct. 131, 1 L.Ed.2d 86 (1956); United States v. Richmond, 178 F.Supp. 44, 46 (D. Conn.1958), quoting Cole v. Loew's, Inc., 76 F.Supp. 872, 877 (S.D.Cal.1948).
[98] United States v. 16,000 Acres of Land, etc., 49 F.Supp. 645, 651 (D.Kan.1942).
[99] Pfizer, Inc. v. Lord, 456 F.2d 532, 542 (8th Cir. 1972), cert. denied, 406 U.S. 976, 92 S.Ct. 2411, 32 L.Ed.2d 676; Davis v. Cities Services Oil Co., 420 F.2d 1278, 1282 (10th Cir. 1970); Baskin v. Brown, 174 F. 2d 391, 394 (4th Cir. 1949); Price v. Johnston, 125 F.2d 806, 811-12 (9th Cir. 1942), cert. denied, 316 U.S. 677, 62 S.Ct. 1106, 86 L.Ed. 1750, quoted in Cole v. Loew's, Inc., 76 F.Supp. 872, 876 (S.D.Cal.1948); United States v. Nehas, 368 F.Supp. 435, 437 (W. D.Pa.1973); United States v. Beneke, 317 F.Supp. 1326 (D.Minn.1970), aff'd, 449 F. 2d 1259 (8th Cir. 1971); United States v. Thomas, 299 F.Supp. 494, 499 (E.D.Mo. 1968); United States v. Hanrahan, 248 F. Supp. 471, 476 (D.D.C.1965); United States v. Valenti, 120 F.Supp. 80, 85 (D.N.J.1954).
[100] United States v. Grinnell Corp., 384 U. S. 563, 583, 86 S.Ct. 1698, 1710, 16 L.Ed.2d 778 (1966) (Douglas, J.). See also N. L. R. B. v. Donnelly Garment Co., 330 U.S. 219, 67 S.Ct. 756, 91 L.Ed. 854 (1947); Duffield v. Charleston Area Medical Center, Inc., 503 F.2d 512, 517 (4th Cir. 1974) (Russell, J.); United States v. Sclafani, 487 F. 2d 245, 255 (2d Cir. 1973), cert. denied, 414 U.S. 1023, 94 S.Ct. 445, 38 L.Ed.2d 313 (1974); Pfizer, Inc. v. Lord, 456 F.2d 532, 537 (8th Cir. 1972), cert. denied, 406 U.S. 976, 92 S.Ct. 2411, 32 L.Ed.2d 676; In re Millman, 439 F.2d 412, 415 (4th Cir. 1971) (Winter, J., with Haynsworth, C. J. and Miller, D. J.); United States v. Anderson, 433 F.2d 856, 860 (8th Cir. 1970); Davis v. Cities Service Oil Co., 420 F.2d 1278 (10th Cir. 1970); Wolfson v. Palmieri, 396 F.2d 121, 124 (2d Cir. 1968) (per curiam); United States v. Beneke, 317 F.Supp. 1326 (D.Minn.1970), aff'd 449 F.2d 1259 (8th Cir. 1971).
[101] United States v. Falcone, 505 F.2d 478, 485 (3d Cir. 1974).
[102] See text accompanying footnotes 18-23, supra.
[103] Pfizer, Inc. v. Lord, 456 F.2d 532, 542 (8th Cir. 1972), cert. denied, 406 U.S. 976, 92 S.Ct. 2411, 32 L.Ed.2d 676; Davis v. Cities Service Oil Co., 420 F.2d 1278, 1282 (10th Cir. 1970); Mirra v. United States, 379 F.2d 782, 787 (2d Cir. 1967), cert. denied, 389 U.S. 1022, 88 S.Ct. 593, 19 L.Ed. 2d 667; United States v. Bolden, 355 F.2d 453 (7th Cir. 1965), cert. denied, 384 U.S. 1012, 86 S.Ct. 1919, 16 L.Ed.2d 1018; In re Union Leader Corp., 292 F.2d 381, 388-89 (1st Cir. 1961), cert. denied, 368 U.S. 927, 82 S.Ct. 361, 7 L.Ed.2d 190; Whitaker v. McLean, 73 App.D.C. 259, 118 F.2d 596 (1941) (per curiam); Ryan v. United States, 99 F.2d 864 (8th Cir. 1938), cert. denied, 306 U.S. 635, 59 S.Ct. 484, 83 L.Ed. 1037; Craven v. United States, 22 F.2d 605, 607 (1st Cir. 1927), cert. denied, 276 U.S. 627, 48 S.Ct. 321, 72 L.Ed. 739 (1928).
[104] United States v. Hanrahan, 248 F.Supp. 471, 476 (D.D.C.1965).
[105] United States v. Grinnell Corp., 384 U. S. 563, 583, 86 S.Ct. 1698, 16 L.Ed.2d 778 (1966); Pfizer, Inc. v. Lord, 456 F.2d 532, 542 (8th Cir. 1972), cert. denied, 406 U.S. 976, 92 S.Ct. 2411, 32 L.Ed.2d 676; Davis v. Cities Service Oil Co., 420 F.2d 1278, 1282 (10th Cir. 1970); Tynan v. United States, 126 U.S.App.D.C. 206, 376 F.2d 761, 765 (1967) (Tamm, J.), cert. denied, 389 U. S. 845, 88 S.Ct. 95, 19 L.Ed.2d 111; Craven v. United States, 22 F.2d 605, 607 (1st Cir. 1927), cert. denied, 276 U.S. 627, 48 S.Ct. 321, 72 L.Ed. 739 (1928); Maret v. United States, 332 F.Supp. 324, 325-26 (E.D.Mo. 1971); United States v. Hanrahan, 248 F. Supp. 471, 476 (D.D.C.1965); In re Federal Facilities Realty Trust, 140 F.Supp. 522, 526 (N.D.Ill.1956).
[106] Craven v. United States, 22 F.2d 605, 607-08 (1st Cir. 1927), cert. denied, 276 U. S. 627, 48 S.Ct. 321, 72 L.Ed. 739 (1928). See also Tynan v. United States, 126 U.S. App.D.C. 206, 376 F.2d 761, 765 (1967) (Tamm, J.), cert. denied, 389 U.S. 845, 88 S.Ct. 95, 19 L.Ed.2d 111; Baskin v. Brown, 174 F.2d 391, 394 (4th Cir. 1949); In re J. P. Linahan, 138 F.2d 650, 653 n. 11 (2d Cir. 1938) (Frank, J., with L. Hand, J. and Swan, J.); In re Federal Facilities Realty Trust, 140 F.Supp. 522, 526 (N.D.Ill.1956); United States v. Valenti, 120 F.Supp. 80, 88 (D.N.J.1954); United States v. 16,000 Acres of Land, etc., 49 F.Supp. 645, 650 (D. Kan.1942).
[107] Tucker v. Kerner, 186 F.2d 79, 84 (7th Cir. 1950). See also United States v. Richmond, 178 F.Supp. 44, 47 (D.Conn.1958); In re Federal Facilities Realty Trust, 140 F.Supp. 522, 525 (N.D.Ill.1956); United States v. Valenti, 120 F.Supp. 80, 86 (D.N.J. 1954).
[108] United States v. 16,000 Acres of Land etc., 49 F.Supp. 645, 650 (D.Kan.1942). See also Brotherhood of Loc. Fire. & Eng. v. Bangor & Aroostook R. R., 127 U.S.App. D.C. 23, 380 F.2d 570, 576 (1967), cert. denied, 389 U.S. 327, 88 S.Ct. 437, 19 L.Ed. 2d 560; Tynan v. United States, 126 U.S. App.D.C. 206, 376 F.2d 761, 764-65 (1967) (Tamm, J.), cert. denied, 389 U.S. 845, 88 S.Ct. 95, 19 L.Ed.2d 111; Maret v. United States, 332 F.Supp. 324, 325 (E.D.Mo.1971); United States v. Hanrahan, 248 F.Supp. 471, 476 (D.D.C.1965); In re Federal Facilities Realty Trust, 140 F.Supp. 522, 526 (N.D.Ill.1956).
[109] United States v. Newman, 481 F.2d 222 (2d Cir. 1973), cert. denied, 414 U.S. 1007, 94 S.Ct. 367, 38 L.Ed.2d 244 (1974); Wolfson v. Palmieri, 396 F.2d 121, 124 (2d Cir. 1968) (per curiam); In re Union Leader Corp., 292 F.2d 381, 388 (1st Cir. 1961), cert. denied, 368 U.S. 927, 82 S.Ct. 361, 7 L.Ed.2d 190; Knapp v. Kinsey, 232 F.2d 458, 466 (6th Cir. 1956), cert. denied, 352 U.S. 892, 77 S.Ct. 131, 1 L.Ed.2d 86; United States v. Garrison, 340 F.Supp. 952 (E.D.La.1972); United States v. Thomas, 299 F.Supp. 494, 498 (E.D.Mo.1968); Denis v. Perfect Parts, Inc., 142 F.Supp. 259, 263 (D. Mass.1956). See also Annot., 2 A.L.R.Fed. 920, 947-48 (1969).
[110] Pfizer, Inc. v. Lord, 456 F.2d 532, 542 (8th Cir. 1972), cert. denied, 406 U.S. 976, 92 S.Ct. 2411, 32 L.Ed.2d 676; Brotherhood of Loc. Fire. & Eng. v. Bangor v. Aroostook R. R., 127 U.S.App.D.C. 235, 380 F.2d 570, 577 (1967), cert. denied, 389 U.S. 327, 88 S.Ct. 437, 19 L.Ed.2d 560; Mirra v. United States, 379 F.2d 782, 788 (2d Cir. 1967), cert. denied, 389 U.S. 1022, 88 S.Ct. 593, 19 L.Ed.2d 667; Maret v. United States, 332 F.Supp. 324, 325 (E.D.Mo.1971); United States v. Ramos, 291 F.Supp. 71, 74 (D.R.I.1968); United States v. Valenti, 120 F.Supp. 80, 86 (D.N.J.1954); United States v. 16,000 Acres of Land, etc., 49 F. Supp. 645, 650 (D.Kan.1942). See also Annot., 2 A.L.R.Fed. 920, 929-30, 937-40, 945, 948 (1969).
[111] Wolfson v. Palmieri, 396 F.2d 121, 124 (2d Cir. 1968) (per curiam): Tynan v. United States, 126 U.S.App.D.C. 206, 376 F. 2d 761, 765 (1967) (Tamm, J.), cert. denied, 389 U.S. 845, 88 S.Ct. 95, 19 L.Ed.2d 111; Gallarelli v. United States, 260 F.2d 259 (1st Cir. 1958), cert. denied, 359 U.S. 938, 79 S. Ct. 654, 3 L.Ed.2d 638 (1959); Knapp v. Kinsey, 232 F.2d 458, 466 (6th Cir. 1956), cert. denied, 352 U.S. 892, 77 S.Ct. 131, 1 L.Ed.2d 86; Craven v. United States, 22 F.2d 605, 607-08 (1st Cir. 1927), cert. denied, 276 U.S. 627, 48 S.Ct. 321, 72 L.Ed. 739 (1928); Deal v. Warner, 369 F.Supp. 174, 177 (W.D. Mo.1973); United States v. Nehas, 368 F. Supp. 435, 437 (W.D.Pa.1973); Molinaro v. Watkins-Johnson CEI Div., 359 F.Supp. 474, 476 (D.Md.1973); United States v. Hanrahan, 248 F.Supp. 471, 476 (D.D.C. 1965); In re Federal Facilities Realty Trust, 140 F.Supp. 522, 526 (N.D.Ill.1956).
[112] In re Union Leader Corp., 292 F.2d 381, 388 (1st Cir. 1961), cert. denied, 368 U.S. 927, 82 S.Ct. 361, 7 L.Ed.2d 190; Deal v. Warner, 369 F.Supp. 174, 177 (W.D.Mo. 1973); United States v. Thomas, 299 F. Supp. 494, 499 (E.D.Mo.1968).
[113] United States v. Grinnell Corp., 384 U.S. 563, 583, 86 S.Ct. 1698, 16 L.Ed.2d 778 (1966); Pfizer, Inc. v. Lord, 456 F.2d 532, 542 (8th Cir. 1972), cert. denied, 406 U.S. 976, 92 S.Ct. 2411, 32 L.Ed.2d 676; United States v. Anderson, 433 F.2d 856, 860 (8th Cir. 1970); Mirra v. United States, 379 F.2d 782, 787-88 (2d Cir. 1967), cert. denied, 389 U.S. 1022, 88 S.Ct. 593, 19 L.Ed.2d 667; United States v. Bell, 351 F.2d 868 (6th Cir. 1965), cert. denied, 383 U.S. 947, 86 S.Ct. 1200, 16 L.Ed.2d 210.
[114] United States v. Anderson, 433 F.2d 856, 860 (8th Cir. 1970).
[115] United States v. Grinnell Corp., 384 U.S. 563, 583, 86 S.Ct. 1698, 16 L.Ed.2d 778 (1966).
[116] Pfizer, Inc. v. Lord, 456 F.2d 532, 538 (8th Cir. 1972), cert. denied, 406 U.S. 976, 92 S.Ct. 2411, 32 L.Ed.2d 676.
[117] Id. at 539.
[118] Id.; United States v. Valenti, 120 F. Supp. 80, 86 (D.N.J.1954); United States v. 16,000 Acres of Land, etc., 49 F.Supp. 645, 650 (D.Kan.1942).
[119] Pfizer, Inc. v. Lord, 456 F.2d 532, 542 (8th Cir. 1972), cert. denied, 406 U.S. 976, 92 S.Ct. 2411, 32 L.Ed.2d 676; In re Union Leader Corp., 292 F.2d 381, 389 (1st Cir. 1961), cert. denied, 368 U.S. 927, 82 S.Ct. 361, 7 L.Ed.2d 190.
[120] United States v. Hanrahan, 248 F.Supp. 471, 477-78 (D.D.C.1965). Cf. Pfizer, Inc. v. Lord, 456 F.2d 532, 542 (8th Cir. 1972), cert. denied, 406 U.S. 976, 92 S.Ct. 2411, 32 L.Ed.2d 676.
[121] Baskin v. Brown, 174 F.2d 391, 394 (4th Cir. 1949) (Parker, C. J.). See also Knapp v. Kinsey, 232 F.2d 458, 466 (6th Cir. 1956), cert. denied, 352 U.S. 892, 77 S.Ct. 131, 1 L.Ed.2d 86; United States v. Nehas, 368 F. Supp. 435, 437 (W.D.Pa.1973); United States v. Valenti, 120 F.Supp. 80, 85-86 (D.N.J.1954).
[122] Rosen v. Sugarman, 357 F.2d 794, 798, 800 (2d Cir. 1966) (Friendly, J.).
[123] Craven v. United States, 22 F.2d 605, 608 (1st Cir. 1927), cert. denied, 276 U.S. 627, 48 S.Ct. 321, 72 L.Ed. 739 (1928). Earlier, the Supreme Court had adopted a slightly different view when it stated that the section was not "intended to paralyze the action of a judge who has heard the case, or a question in it, by the interposition of a motion to disqualify him between a hearing and a determination of the matter heard." Ex parte Amer. Steel Barrel Co., 230 U.S. 35, 44, 33 S.Ct. 1007, 1010, 57 L.Ed. 1379 (1913). For cases discussing this view see United States v. Hoffa, 382 F.2d 856, 859 (6th Cir. 1967), cert. denied, 390 U.S. 924, 88 S.Ct. 854, 19 L.Ed.2d 984 (1968); Tucker v. Kerner, 186 F.2d 79, 84-85 (7th Cir. 1950); In re Federal Facilities Realty Trust, 140 F.Supp. 522, 525 (N.D.Ill.1956); United States v. Valenti, 120 F.Supp. 80, 83 n. 3 (D.N.J.1954); Cole v. Loew's Inc., 76 F.Supp. 872, 875 (S.D.Cal.1948); United States v. 16,000 Acres of Land, etc., 49 F. Supp. 645, 650 (D.Kan.1942).
[124] Wolfson v. Palmieri, 396 F.2d 121, 124 (2d Cir. 1968) (per curiam); Tynan v. United States, 126 U.S.App.D.C. 206, 376 F.2d 761, 765 (1967) (Tamm, J.), cert. denied, 389 U.S. 845, 88 S.Ct. 95, 19 L.Ed.2d 111; Baskin v. Brown, 174 F.2d 391, 394-95 (4th Cir. 1949); United States v. Thomas, 299 F.Supp. 494, 498 (E.D.Mo.1968); United States v. Hanrahan, 248 F.Supp. 471, 476 (D.D.C.1965); In re Federal Facilities Realty Trust, 140 F.Supp. 522, 526 (N.D.Ill. 1956); United States v. Valenti, 120 F.Supp. 80, 88 (D.N.J.1954); United States v. 16,000 Acres of Land, etc., 49 F.Supp. 645, 650 (D.Kan.1942).
[125] 456 F.2d 532 (8th Cir. 1972), cert. denied, 406 U.S. 976, 92 S.Ct. 2411, 32 L.Ed.2d 676.
[126] Id. at 541.
[127] Id. at 542; See also Graham v. John Deere Co., 383 U.S. 1, 18, 86 S.Ct. 684, 15 L.Ed.2d 545 (1966).
[128] 456 F.2d at 542 (emphasis added).
[129] See text accompanying notes 73-117, supra.
[130] Pfizer, Inc. v. Lord, 456 F.2d 532, 544 (8th Cir. 1972), cert. denied, 406 U.S. 976, 92 S.Ct. 2411, 32 L.Ed.2d 676.
[131] 140 F.Supp. 522 (N.D.Ill.1956).
[132] Id. at 526 (emphasis added).
[133] Transcript of Record at 102, 104. See also Transcript of Record, July 30, 1973, at 5, 71-83; Transcript of Record, August 13, 1973, at 79.
[134] Transcript of Record, July 11, 1972, at 167; Transcript of Record, July 13-14, at 320.
[135] Duffield v. Charleston Area Medical Center, Inc., 503 F.2d 512, 517 (4th Cir. 1974) (Russell, J.).
[136] Duplan Corp. v. Moulinage et Retorderie de Chavanoz, 509 F.2d 730, 736-37 (4th Cir. 1974).
[137] Fleischer v. A. A. P., Inc., 180 F.Supp. 717, 720 (S.D.N.Y.1959); United States v. Valenti, 120 F.Supp. 80, 86 (D.N.J.1954). See also Annot., 23 A.L.R.3d 1416, 1420-22 (1969).
[138] Plaquemines Parish Sch. Bd. v. United States, 415 F.2d 817 (5th Cir. 1969); Rosen v. Sugarman, 357 F.2d 794, 798 (2d Cir. 1966) (Friendly, J.); In re Union Leader Corp., 292 F.2d 381, 390 (1st Cir. 1961), cert. denied, 368 U.S. 927, 82 S.Ct. 361, 7 L.Ed.2d 190; Foster v. Medina, 170 F.2d 632, 633 (2d Cir. 1948), cert. denied, 335 U.S. 909, 69 S.Ct. 412, 93 L.Ed. 442 (1949); United States v. Valenti, 120 F.Supp. 30, 86, 87 n. 15 (D.N.J.1954); United States v. 16,000 Acres of Land, etc., 49 F.Supp. 645, 650 (D.Kan.1942). See also Annot., 2 A.L. R. Fed. 920, 930-31 (1969).
[139] Rosen v. Sugarman, 357 F.2d 794, 798 (2d Cir. 1966) (Friendly, J.).
[140] United States v. Valenti, 120 F.Supp. 80, 85 (D.N.J.1954).
[141] 456 F.2d 532 (8th Cir. 1972), cert. denied, 406 U.S. 976, 92 S.Ct. 2411, 32 L.Ed.2d 676.
[142] Id. at 544 n. 11.
[143] United States v. Valenti, 120 F.Supp. 80, 86 (D.N.J.1954); United States v. 16,000 Acres of Land, etc., 49 F.Supp. 645, 653 (D.Kan.1942).
[144] United States v. 16,000 Acres of Land, etc., 49 F.Supp. 645, 654 (D.Kan.1942).
[145] United States v. Valenti, 120 F.Supp. 80, 87 (D.N.J.1954).
[146] Id. at n. 15.
[147] See text accompanying Note 100, supra.
[148] 255 U.S. 22, 41 S.Ct. 230, 65 L.Ed. 481 (1921).
[149] Id. at 28-29, 41 S.Ct. at 231.
[150] Cf. Lawton v. Tarr, 327 F.Supp. 670, 673 (E.D.N.C.1971), where Judge Craven stated:

I do not believe that my strong aversion to the Vietnam War and my belief that it is the most tragic national mistake in my lifetime will have the slightest effect or influence upon my judgment . . .. [citations omitted] The motion to recuse is denied.
See also United States v. 16,000 Acres of Land, etc., 49 F.Supp. 645, 654 (D.Kan. 1942), where it was noted that:
[t]he court frankly stated that it appeared that an unfair advantage had been taken of the petitioner (landowner) and that the option obtained was inequitable. The statement indicates neither prejudice in favor of . . . nor against . . . [the parties].
[151] United States v. 16,000 Acres of Land, etc., 49 F.Supp. 645, 648 (D.Kan.1942).
[152] Id. at 653.
[153] Rosen v. Sugarman, 357 F.2d 794, 798 (2d Cir. 1966) (Friendly, J.); Refior v. Lansing Drop Forge Co., 124 F.2d 440, 444-45 (6th Cir. 1942), cert. denied, 316 U.S. 671, 62 S.Ct. 1047, 86 L.Ed. 1746; United States v. Birrell, 276 F.Supp. 798, 809 (S.D. N.Y.1967); United States v. 16,000 Acres of Land, etc., 49 F.Supp. 645, 656 (D.Kan. 1942).
[154] Pfizer, Inc. v. Lord, 456 F.2d 532, 541 (8th Cir. 1972), cert. denied, 406 U.S. 976, 92 S.Ct. 2411, 32 L.Ed.2d 676.
[155] United States v. 16,000 Acres of Land, etc., 49 F.Supp. 645, 654 (D.Kan.1942).
[156] Craven v. United States, 22 F.2d 605, 608 (1st Cir. 1927) (citations omitted), cert. denied, 276 U.S. 627, 48 S.Ct. 321, 72 L.Ed. 739 (1928), quoted in In re Federal Facilities Realty Trust, 140 F.Supp. 522, 526-27 (N.D.Ill.1956). Cf. United States v. Birrell, 276 F.Supp. 798, 809 (S.D.N.Y.1967).
[157] 292 F.2d 381 (1st Cir. 1961), cert. denied, 368 U.S. 927, 82 S.Ct. 361, 7 L.Ed.2d 910. See also cases noted in footnote 161, infra.
[158] Id. at 391.
[159] Transcript of Record, April 1, 1975, at 144. It is uncertain, however, whether Senator Hollings considered all factors when making his analysis. In 1961, the caseload in this district was three hundred (300) cases per judge per year; today it has increased to six hundred (600) cases per judge per year and is increasing every year. This district currently has the third highest caseload per judge in the nation and is starving for judicial manpower at the time of this writing. In fact, the caseload in the District of South Carolina is greater than that in some districts having twice as many judges.
[160] Wolfson v. Palmieri, 396 F.2d 121, 125-26 (2d Cir. 1968) (per curiam).
[161] United States v. Sclafani, 487 F.2d 245, 255 (2d Cir. 1973), cert. denied, 414 U.S. 1023, 94 S.Ct. 445, 38 L.Ed.2d 313 (1974); United States v. Diorio, 451 F.2d 21 (2d Cir. 1971), cert. denied, 405 U.S. 955, 92 S.Ct. 1173, 31 L.Ed.2d 232; In re Millman, 439 F. 2d 412, 415 (4th Cir. 1971) (Winter, J., with Haynsworth, C. J. and Miller, D. J.); United States v. Anderson, 433 F.2d 856, 860 (8th Cir. 1970); Action Realty Co. v. Wills, 427 F.2d 843 (7th Cir. 1970); Wolfson v. Palmieri, 396 F.2d 121, 124 (2d Cir. 1968) (per curiam); United States v. Hoffa, 382 F.2d 856, 861 (6th Cir. 1967), cert. denied, 390 U.S. 924, 88 S.Ct. 854, 19 L.Ed.2d 984 (1968); Tynan v. United States, 126 U.S. App.D.C. 206, 376 F.2d 761, 764, 765 (1967) (Tamm, J.), cert. denied, 389 U.S. 845, 88 S.Ct. 95, 19 L.Ed.2d 111; Rosen v. Sugarman, 357 F.2d 794, 797 (2d Cir. 1966) (Friendly, J.); Tucker v. Kerner, 186 F.2d 79, 85 (7th Cir. 1950); Deal v. Warner, 369 F.Supp. 174, 176 (W.D.Mo.1973); Molinaro v. Watkins-Johnson CEI Div., 359 F. Supp. 474, 476 (D.Md.1973); United States v. Thomas, 299 F.Supp. 494, 498 (E.D.Mo. 1968); Town of East Haven v. Eastern Airlines, Inc., 293 F.Supp. 184, 189 (D. Conn.1968); United States v. Devlin, 284 F. Supp. 477 (D.Conn.1968); United States v. Birrell, 276 F.Supp. 798, 809 (S.D.N.Y. 1967); United States v. Hanrahan, 248 F. Supp. 471, 475 (D.D.C.1965) (Sirica, J.); In re Federal Facilities Realty Trust, 140 F.Supp. 522, 526 (N.D.Ill.1956); United States v. Valenti, 120 F.Supp. 80, 84 (D. N.J.1954); United States v. 16,000 Acres of Land, etc., 49 F.Supp. 645, 648 (D.Kan. 1942).
[162] McLaughlin v. Venore Transp. Co., 244 F.Supp. 802, 803-04 (D.Mass.1965).
[163] Rosen v. Sugarman, 357 F.2d 794, 798 (2d Cir. 1966) (Friendly, J.)
[164] Lawton v. Tarr, 327 F.Supp. 670, 674 (E.D.N.C.1971).
[165] Town of East Haven v. Eastern Airlines, Inc., 293 F.Supp. 184, 188 (D.Conn.1968).